Thomas R. HOLMES, Respondent,

v.

WATSON–FORSBERG COMPANY, Defendant and Third-Party Plaintiff, Petitioner, Appellant,

v.

PRO–TECH ROOF SYSTEMS, INC., Third-Party Defendant, Respondent,

and

Employee Benefit Administration, Intervenor, Respondent.

No. C9–90–2637.

Supreme Court of Minnesota.

Aug. 28, 1992.

Mark A. Gwin, Michael D. Barrett, Cousineau, McGuire & Anderson, Chartered, Minneapolis, for appellant.

Wayne Tritbough, Dale O. Thornsjo, Peterson & Hektner, Ltd., Minneapolis, for Pro–Tech Roof Systems, Inc.

Tyrone P. Bujold, William E. Dorigan, Minneapolis, for Thomas R. Holmes.

John H. Faricy, Jr., M. Chapin Hall, Minneapolis, for Employee Ben. Admin.

Todd M. Goderstad, St. Paul, and A. Patrick Leighton, Steven D. Snelling, Moore, Costello & Hart, St. Paul, for amicus Assoc. Gen. Contr. of MN.

WAHL, Justice.

Upon petition of Watson–Forsberg, the general contractor in a construction project in St. Anthony, we review a decision of the court of appeals which reversed a partial summary judgment[1] entered in Watson–Forsberg's favor on its motion for a judicial declaration that it was entitled to indemnification from the third-party defendant-subcontractor Pro–Tech Roof Systems, Inc., to the extent of the insurance specified in the subcontract agreement. We reverse.

---

1. In its amended order, the trial court expressly determined that, in accordance with Minn. R.Civ.P. 54.02, there was no just reason for delay and expressly directed the entry of judgment to allow an immediate appeal.

Plaintiff Thomas Holmes, an employee of the roofing subcontractor Pro–Tech, was injured on November 16, 1986, when, while engaged in a roofing activity, he slid down the roof and fell to the ground. Holmes received workers' compensation benefits from the Employee Benefit Administration[2] and commenced this action to recover damages against Watson–Forsberg, alleging that it was negligent in failing to inspect the premises for unsafe conditions, in failing to warn the plaintiff of the unsafe conditions, and in failing to remove snow and ice from the roof prior to directing the subcontractor to begin its work. Watson–Forsberg, in turn, commenced a third-party action against Pro–Tech, alleging the latter's negligence in its training, supervision, and work performance at the job site and asserting Watson–Forsberg's claim of entitlement to contractual indemnity pursuant to the parties' subcontract agreement.

Watson–Forsberg moved the district court for summary judgment first, dismissing the plaintiff's action on the basis that Holmes primarily assumed the risk,[3] and then, declaring that it was entitled to indemnification from third-party defendant Pro–Tech to the extent of the insurance specified in the subcontract agreement. The trial court construed the subcontract agreement and concluded that it required the third-party defendant, the subcontractor Pro–Tech, to maintain insurance for the purpose of indemnifying Watson–Forsberg.

On Pro–Tech's appeal, the court of appeals reversed, characterizing the critical provision of the subcontract agreement as an unenforceable indemnification agreement. Minn.Stat. § 337.02. *Holmes v. Watson–Forsberg Co.*, 471 N.W.2d 109 (Minn.Ct.App.1990). We disagree.

On March 19, 1986, Watson–Forsberg and Pro–Tech executed an industry-accept-ed standard subcontract agreement which contained, among other provisions defining the obligations of the parties, provision 7[4] which required the subcontractor to purchase insurance as follows:

7. To obtain, maintain and pay for such insurance as may be required by the General Contract, the rider attached hereto, or by law, and to furnish the Contractor satisfactory evidence that it has complied with this paragraph; and to obtain and furnish to the Contractor an undertaking by the insurance company issuing each such policy that such policy will not be cancelled except after fifteen (15) days notice to the Contractor of its intention to so do.

The Subcontractor agrees to assume entire responsibility and liability, to the fullest extent permitted by law, for all damages or injury to all persons, whether employees or otherwise, and to all property, arising out of it, resulting from or in any manner connected with, the execution of the work provided for in this Subcontract or occurring or resulting from the use by the Subcontractor, his agents or employees, of materials, equipment, instrumentalities or other property, whether the same be owned by the Contractor, the Subcontractor or third parties, and the Subcontractor, to the fullest extent permitted by law, agrees to indemnify and save harmless the Contractor, his agents and employees from all such claims including, without limiting the generality of the foregoing, claims for which the Contractor may be or may be claimed to be, liable and legal fees and disbursements paid or incurred to enforce the provisions of this paragraph and the Subcontractor further agrees to obtain, maintain and pay for such general liability insurance coverage

---

2. Employee Benefit Administration intervened in these proceedings to protect its subrogation rights under Minn.Stat. § 176.061 (1988).

3. The trial court denied the motion to dismiss the complaint, concluding that there existed genuine issues of material fact as to whether the plaintiff voluntarily undertook a risk. That portion of the trial court's decision is not a part of this appeal.

4. We have construed this language in a different context and prior to the enactment of Minn.Stat. ch. 337 on other occasions. *See Johnson v. McGough Constr. Co., Inc.,* 294 N.W.2d 286 (Minn.1980); *Anstine v. Lake Darling Ranch,* 305 Minn. 243, 233 N.W.2d 723 (1975); *Christy v. Menasha Corp.,* 297 Minn. 334, 211 N.W.2d 773 (1973).

and endorsements as will insure the provisions of this paragraph.

The record indicates that Pro–Tech did obtain the requisite insurance which included a policy endorsement providing contractual indemnification consistent with provision 7 of the subcontract agreement.

The issue thus framed for our consideration is whether such an agreement for the provision of insurance is enforceable under the provisions of Minn.Stat. §§ 337.01–337.06 (1988),[5] the legislation defining and restricting building and construction contracts.

Minn.Stat. § 337.02, upon which the court of appeals relied in both its characterization of provision 7 and its disposition of the question of that provision's enforceability provides as follows:

> An indemnification agreement contained in, or executed in connection with, a building and construction contract is unenforceable except to the extent that the underlying injury or damage is attributable to the negligent or otherwise wrongful act or omission, including breach of a specific contractual duty, of the promisor or the promisor's independent contractors, agents, employees, or delegatees.

The appellate court concluded that, consistent with its view of the legislative history and intent, provision 7 is both unenforceable as an indemnification agreement and contrary to the legislative goal of insuring that "each link in the chain of construction [is] responsible for the consequences of its own negligence." *Holmes v. Watson–Forsberg Co.*, 471 N.W.2d 109, 112 (Minn. Ct.App.1990).

The characterization of provision 7 as an invalid indemnification agreement is erroneous, not only because it ignores the clear and unambiguous language of the contractual provision which obligates this subcon-

tractor to obtain "general liability insurance coverage and endorsements as will insure the provisions of this paragraph," but also because by operation of Minn.Stat. § 337.05, the legislature itself has approved its use and, for practical purposes, has carved out an exception from the general prohibition contained in section 337.02. Minn.Stat. § 337.05, subd. 1[6] provides:

> Sections 337.01 to 337.05 do not affect the validity of agreements whereby a promisor agrees to provide specific insurance coverage for the benefit of others.

In our view, the legislature both anticipated and approved a long-standing practice in the construction industry by which the parties to a subcontract could agree that one party would purchase insurance that would protect "others" involved in the performance of the construction project. Such a risk allocation method is a practical response to problems inherent in the performance of a subcontract and, in instances where the risk of loss is one directly related to and arising out of the work performed under the subcontract, the parties are free to place the risk of loss upon an insurer by requiring one of the parties to insure against that risk. *See Independent School Dist. No. 877 v. Loberg Plumbing & Heating Co.*, 266 Minn. 426, 436–37, 123 N.W.2d 793, 800–01 (1963). Here, the subcontractor did in fact pay a premium and obtain the specific coverage contemplated by the agreement. To now argue that the agreement is unenforceable is disingenuous.

We therefore decline to impose a restrictive reading on either the legislation or provision 7 of the subcontract and direct the reinstatement of the trial court's decision, declaring that Watson–Forsberg is entitled to the benefit of the insurance pro-

---

5. One commentator has characterized Minn. Stat. ch. 337, more particularly Minn.Stat. § 337.02 as a restrictive approach by which the legislature has limited the permissible scope of indemnity agreements. *See* Daniel S. Kleinberger, *No Risk Allocation Need Apply: The Twisted Minnesota Law of Indemnification*, 13 Wm. Mitchell L.Rev. 775, 811–12 (1987).

6. *See also* Minn.Stat. § 337.04 which provides as follows:

> Sections 337.01 to 337.05 do not affect the validity of any insurance contract, workers' compensation agreement, construction bond, or other agreement lawfully issued by an insurer or bonding company.

cured by Pro–Tech in performance of its subcontract agreement.

Reversed.