**D.W. HUTT CONSULTANTS, INC., Respondent,**

v.

**CONSTRUCTION MAINTENANCE SYSTEMS, INC., Appellant.**

No. C9–94–1416.

Court of Appeals of Minnesota.

Jan. 3, 1995.

Roger C. Justin, Rinke–Noonan, St. Cloud, for respondent.

Dan T. Ryerson, Gislason, Martin & Varpness, Edina, for appellant.

Considered and decided by RANDALL, P.J., and SCHUMACHER and MANSUR, JJ.

## OPINION

MARTIN J. MANSUR, Judge.*

Respondent D.W. Hutt Consultants, Inc. (Hutt) filed a complaint in district court against appellant Construction Maintenance Systems, Inc. (CMS), one of its subcontractors, seeking indemnification under their subcontract for benefits and expenses it was ordered to pay in a workers' compensation proceeding. On cross-motions for summary judgment, the district court granted respondent's motion and ordered the indemnification of respondent by appellant. We reverse.

## FACTS

Hutt was hired as general manager for a construction project at Campus Village Apartments in Rochester, Minnesota. Hutt subcontracted the installation of vinyl siding to CMS. Hutt and CMS executed a Standard Subcontract Agreement of the Associated General Contractors of Minnesota.

CMS subcontracted with Quality Roofing and Siding (Quality) to supply labor for the installation of the siding. Quality hired

* Retired judge of the district court, serving as judge of the Minnesota Court of Appeals by ap-

Clark Horsman and employed him on the project until Quality quit the job in January 1992 over a payment dispute. Horsman asked Hutt to keep him on as an employee to finish the job and Hutt agreed.

On March 4, 1992, Horsman fell off a ladder at work and injured his knee and ankle. Hutt had no workers' compensation insurance so Horsman received workers' compensation benefits for his injuries from the state Special Compensation Fund. Horsman initiated a workers' compensation claim proceeding against Hutt, CMS, and Quality. The workers' compensation judge found that Hutt was Horsman's employer at the time of his injury and ordered Hutt to reimburse the Special Compensation Fund and pay Horsman's attorney fees.

Hutt filed this suit against CMS seeking indemnification under their subcontract for payments it made to the Special Compensation Fund, attorney fees and costs, and a release from any future liability for Horsman's injuries. Hutt and CMS brought cross-motions for summary judgment. The district court granted summary judgment in favor of Hutt. The court found that the language of the indemnification clause was unambiguous and provided for indemnification of Hutt's expenses. The court also held that the indemnification clause was an agreement to provide specific insurance coverage under Minn.Stat. § 337.05, subd. 1 (1990) and not an unenforceable indemnification provision under Minn.Stat. § 337.02 (1990). CMS appeals from the entry of summary judgment in favor of Hutt.

## ISSUE

Is an indemnification agreement unenforceable under Minn.Stat. § 337.02 where the general contractor has failed to provide workers' compensation insurance for its employee and seeks indemnification for expenses for which it is liable under the Workers' Compensation Act?

pointment pursuant to Minn. Const. art. VI, § 10.

## ANALYSIS

■ On appeal from summary judgment, this court must determine whether there are any genuine issues of material fact and whether the trial court erred in its application of the law. *State by Cooper v. French,* 460 N.W.2d 2, 4 (Minn.1990). Statutory construction is a question of law which this court reviews de novo. *Hibbing Education Ass'n v. Public Employment Relations Bd.,* 369 N.W.2d 527, 529 (Minn.1985). Similarly, contract interpretation and application is a question of law which this court reviews de novo. *Iowa Kemper Ins. Co. v. Stone,* 269 N.W.2d 885, 887 (Minn.1978).

The indemnification provision of the subcontract provides that the subcontractor, CMS, agrees

> [t]o obtain, maintain, and pay for such insurance as may be required by the General Contract, the rider attached hereto, or by law and to furnish the Contractor satisfactory evidence that it has complied with this paragraph; and to obtain and furnish to the Contractor an undertaking by the insurance company issuing each such policy that such policy will not be cancelled except after fifteen (15) days notice to the Contractor of its intention to do so.
>
> The Subcontractor agrees to assume entire responsibility and liability, to the fullest extent permitted by law, for all damages or injury to all persons, whether employees or otherwise, and to all property, arising out of it, resulting from or in any manner connected with, the execution of the work provided for in this Subcontract or occurring or resulting from the use by the Subcontractor, his agents or employees, of materials, equipment, instrumentalities or other property, whether the same be owned by the Contractor, the Subcontractor or third parties, and the Subcontractor, to the fullest extent permitted by law, agrees to indemnify and save harmless the Contractor, his agents and employees from all such claims including, without limiting the generality of the foregoing, claims for which the Contractor may be or may be claimed to be, liable and legal fees and disbursements paid or incurred to enforce the provisions of this paragraph and the Subcontractor further agrees to obtain, maintain and pay for such general liability insurance coverage and endorsements as will insure the provisions of this paragraph.

Minnesota law provides that an indemnification agreement in a building and construction contract is unenforceable except when the injury or damage is attributable to the negligence of the promisor. Minn.Stat. § 337.02 (1990).[1] However, an exception exists when the promisor "agrees to provide specific insurance coverage for the benefit of others." Minn.Stat. § 337.05, subd. 1 (1990).[2]

Recent case law has considered the enforceability of this indemnification provision in the context of a tort liability claim by an injured employee of a subcontractor against the general contractor. *Holmes v. Watson–Forsberg Co.,* 488 N.W.2d 473 (Minn.1992). In *Holmes,* a roofing subcontractor's employee brought a personal injury action against the general contractor alleging that the injuries he sustained when he fell off a roof at work were attributable to the general contractor's negligence. *Id.* at 474. The general contractor sought indemnification from the subcontractor under an indemnification provision identical to that quoted above. *Id.* The supreme court held that the indemnification provision was an enforceable agreement under Minn.Stat. § 337.05, subd. 1.

> The characterization of provision 7 as an invalid indemnification agreement is erroneous, not only because it ignores the clear and unambiguous language of the contractual provision which obligates this subcon-

---

1. Minn.Stat. § 337.02 provides:

 An indemnification agreement contained in, or executed in connection with, a building and construction contract is unenforceable except to the extent that the underlying injury or damage is attributable to the negligent or otherwise wrongful act or omission, including breach of a specific contractual duty, of the promisor or the promisor's independent contractors, agents, employees or delegatees.

2. Minn.Stat. § 337.05, subd. 1 provides:

 Sections 337.01 to 337.05 do not affect the validity of agreements whereby a promisor agrees to provide specific insurance coverage for the benefit of others.

tractor to obtain "general liability insurance coverage and endorsements as will ensure the provisions of this paragraph," but also because by operation of Minn.Stat. § 337.05, the legislature itself has approved its use and, for practical purposes, has carved out an exception from the general prohibition contained in section 337.02. *Id.* at 475.

The case at bar does not fit the factual pattern presented by *Holmes*. Here, the general contractor is not seeking indemnification from the subcontractor for tort liability related to the subcontract work; rather the general contractor is seeking indemnification for expenses related to a workers' compensation claim by an injured employee where it failed to meet its statutory duty to acquire workers' compensation insurance. Whether the indemnification provision is enforceable under these circumstances is a question of first impression.

 The purpose of the Workers' Compensation Act is to provide security for individuals in the work force and to shift economic loss to industry and the public by holding employers strictly liable for work-related injuries sustained by their employees. *Tracy v. Streater/Litton Indus.*, 283 N.W.2d 909, 916 (Minn.1979); *see also* 3A Norman J. Singer, Sutherland Stat. Const. § 73.02 (5th ed. 1992). To further this purpose, every employer must carry workers' compensation insurance or seek a written exemption permitting self-insurance. Minn.Stat. § 176.181, subd. 2 (1990). Allowing a general contractor to shift its workers' compensation expenses by means of an indemnification provision would contravene the public policy embodied in the Workers' Compensation Act to require employers to bear the burden of their employee's work-related injuries. Allowing indemnification in this case might also create an incentive for employers to forego purchasing insurance for their employees as required by law.

 Furthermore, the legislature contemplated the enactment of Minn.Stat. §§ 337.01–.06 in the context of tort liability:

> [T]he whole notion behind our tort law is that people pay for the damages they cause and * * * that keeps them from * * * acting in a negligent manner. It encourages responsible behavior, and that's the general thrust of the bill.

*Holmes v. Watson–Forsberg*, 471 N.W.2d 109, 111 (Minn.App.1991) (quoting legislative history of Minn.Stat. §§ 337.01–.06), *rev'd on other grounds*, 488 N.W.2d 473 (Minn.1992). It is doubtful the legislature intended Minn. Stat. § 337.05, subd. 1 to provide for indemnification of workers' compensation expenses where the general contractor has breached its duty to acquire workers' compensation insurance.

Similarly, while the court in *Holmes* stated that

> in instances where the risk of loss is 'one directly related to and arising out of the work performed under the subcontract, the parties are free to place the risk of loss upon an insurer by requiring one of the parties to insure against that risk.

*Holmes*, 488 N.W.2d at 475, the court was concerned there with tort liability, not workers' compensation liability. Where, as a matter of public policy, the legislature has already decided who shall bear the risk of loss, the parties to a contract are not free to place that risk on someone else. *See Independent School Dist. No. 877 v. Loberg Plumbing & Heating Co.*, 266 Minn. 426, 434, 123 N.W.2d 793, 799 (1963) (contract provisions that violate public policy are void).

Based on the determination of the workers' compensation judge that Horsman was Hutt's employee[3] and Hutt's failure to purchase workers' compensation insurance, Hutt was responsible for Horsman's workers' compensation expenses. Hutt cannot shift its responsibility under the Workers' Compensation Act by use of Minn.Stat. § 337.05 subd.

---

3. Hutt also asks this court to determine whether it is collaterally estopped from attacking the decision of the workers' compensation judge that Horsman was its employee. The district court did not address the collateral estoppel issue and therefore it is not properly before this court.

However, we would question how the identity of Horsman's employer is relevant to this cause of action where Hutt is merely seeking indemnification for expenses for which it has already been found liable.

1 because to do so would contravene public policy. In the context of this case, the indemnification provision of the subcontract is unenforceable under Minn.Stat. § 337.02.

## DECISION

The indemnification provision of the subcontract is unenforceable in this case, where Hutt has failed to acquire workers' compensation insurance as required by law and is seeking indemnification for expenses for which it is responsible under the Workers' Compensation Act. Therefore, Hutt's summary judgment is reversed.

**Reversed.**