Linus KATZNER, Respondent,

v.

KELLEHER CONSTRUCTION,
Defendant and Third-Party
Plaintiff, Respondent,

Ellerbe Becket Construction Services, Inc.,
a Delaware Corporation, Defendant and
Third-Party Plaintiff, Petitioner, Appellant,

Gresser, Inc., and Spancrete Midwest Co.,
Third-Party Defendants, Respondents.

No. C4–95–555.

Supreme Court of Minnesota.

March 29, 1996.

Robert Peterson, Andrea Reisbord, Minneapolis, for appellant.

Kevin Keenan, Charles Lundberg, Lawrence Skoglund, John R. Thomas, Minneapolis, Robert Gardner, St. Louis Park, Daniel Haws, St. Paul, for respondent.

## OPINION

KEITH, Chief Justice.

This case involves the interpretation of insurance and indemnity provisions contained in construction contracts between Ellerbe Becket Construction Services, Inc., the designer/builder[1] of a construction project in Shoreview, Minnesota, and two of its contractors, Kelleher Construction Corporation and Spancrete Midwest Company. Ellerbe contends that its contracts with Kelleher and Spancrete require the contractors (1) to indemnify Ellerbe against all claims arising from the construction project, including claims based upon Ellerbe's own negligence, and (2) to procure insurance accordingly. Because we find that the obligation of the contractors to indemnify and insure Ellerbe only extends to any claims arising out of the contractors' and their employees' own negligence, we affirm the court of appeals' decision.

### I.

This case arises out of an accident that occurred on the construction project designed and supervised by Ellerbe. On November 27, 1989, Linus Katzner, a masonry worker, stepped onto a large piece of styrofoam at the construction site, unaware that the styrofoam covered a 20–foot deep hole. Katzner fell into the hole, and suffered serious injuries. Katzner's employer, Gresser, Inc., had entered into a subcontract with Kelleher for the performance of certain masonry work on the project. Katzner later received workers' compensation benefits from Gresser's insurance carrier and released Gresser from further liability. In the fall of 1991, Katzner commenced this personal injury action against Kelleher and Ellerbe in Ramsey County District Court, alleging negligence in maintaining an unsafe worksite and violations of several OSHA requirements. Ellerbe and Kelleher brought cross-claims against each other, and commenced a third-party claim for contribution and indemnity against Spancrete and Gresser.

1. Although Ellerbe is referred to as the "Design/Builder" in the contracts at issue in this case, it performed none of the physical work at the construction site. Instead, it delegated various portions of the building project to its contractors.

Ellerbe moved for summary judgment, arguing that Spancrete and Kelleher are required to defend and indemnify Ellerbe from all claims, including claims arising out of Ellerbe's own negligence. Spancrete and Kelleher moved for summary judgment on the same issue, contending that their responsibility to Ellerbe is limited to indemnification from claims arising from only their own actions.

The contracts between Ellerbe and its contractors, Kelleher and Spancrete, were signed in October and November of 1989. Spancrete entered into a lump sum contract with Ellerbe for the installation of all precast, prestressed concrete required for the completion of Ellerbe's construction project. Kelleher signed an identical contract requiring Kelleher to perform concrete and masonry work for the same project. Both contracts incorporated by reference Ellerbe's General Conditions of Construction, containing the indemnification and insurance provisions relevant to this action.

The General Conditions of Construction include the following language relating to indemnification:

> 2.17 Indemnification Against Injury or Damage. The Contractor shall indemnify and hold harmless the Owner, the Design/Builder, the Design/Builder's Architect and Consultants, and their agents and employees from and against all claims, damages, losses and expenses (including Attorneys' fees) *arising out of or resulting from the performance of the Work,* provided that any such claim, damage, loss or expense (a) is attributable to bodily injury, sickness, disease or death, or to injury to or destruction of tangible property * * *, and (b) *is caused in whole or in part by any negligent act or omission of the Contractor, any Subcontractor or Sub-subcontractors, anyone directly or indirectly employed by any of them or anyone for whose acts any of them may be liable, regardless of whether or not it is caused in part by a party indemnified hereunder.*

(emphasis added). "Work" is defined as "all labor and services necessary to secure all field measurements and to produce the construction required by or reasonably inferable from the Contract Documents." The General Conditions of Construction also require the provision of certain types of insurance:

10.1 Contractor's Liability Insurance. The Contractor shall provide liability insurance as follows:

10.1.1 The Contractor shall purchase and maintain comprehensive general liability insurance as will protect himself, the Design/Builder, the Design/Builder's Architect and Consultants, and the Owner from claims set forth below *which may arise out of or result from the Contractor's operations under the Contract,* whether such claims arise during contract performance or subsequent to completion of operations under the Contract and *whether such operations be by himself or by any Subcontractor or by anyone directly or indirectly employed by any of them or by anyone for whose acts any of them may be liable.*

1. Claims under Worker's Compensation, disability benefit and other similar employee benefit acts,

2. Claims for damages because of bodily injury, occupational sickness or disease, or death of its employees, and claims insured by usual personal injury liability coverage with employment related Exclusion Removed,

\* \* \* \* \* \*

5. Claims for damages insured by usual personal injury liability coverage which are sustained (a) by any person as a result of an offense directly or indirectly related to the employment of such person by the Contractor, or (b) by any other person.

\* \* \* \* \* \*

10.1.3 The insurance required by subparagraph 10.1.1 shall be written for not less than any limits of liability specified below or required by law, whichever is greater, *and shall include contractual liability insurance as applicable to the Contractor's obligations under paragraphs 2.10, 2.17 and 7.2.7.*

(emphasis added).

In support of its motion for summary judgment, Ellerbe argued that these provisions require Kelleher and Spancrete to cover all of Ellerbe's potential liability arising from Katzner's injuries, including any damages caused by Ellerbe's own negligence. Kelleher and Spancrete responded that their liability under the contracts is limited to their own operations, and that they never agreed to assume responsibility for Ellerbe's negligent acts as well. The district court granted summary judgment in their favor, finding that although Kelleher and Spancrete could have agreed to indemnify and insure Ellerbe for Ellerbe's own negligence, the contracts signed in this case do not clearly reflect such an agreement. The court commented that the insurance provision, namely section 10.1.1 of the General Conditions of Construction, only requires Spancrete and Kelleher to purchase general liability insurance for claims "which may arise out of or result from the Contractor's operations under the Contract," and not for claims arising out of Ellerbe's own operations.

Katzner's personal injury claims were then tried before a jury. The jury found that both Katzner and several of the defendants were jointly responsible for Katzner's injuries, and apportioned liability between the parties as follows: Katzner—5%; Ellerbe—20%; Gresser—65%; Spancrete—10%.[2] The jury did not find that Kelleher was negligent. Ellerbe does not contest the jury's verdict on appeal.

After trial, Ellerbe appealed the district court's summary judgment order on the indemnity and insurance issues to the court of appeals. That court affirmed, concluding that under the contracts "neither Kelleher nor Spancrete has a duty to defend or indemnify Ellerbe against claims based on Ellerbe's own negligence, since neither has

---

**2.** Because Gresser was dismissed from Katzner's lawsuit pursuant to a settlement agreement approved by the district court, its liability for Katzner's injuries was limited to the settlement terms. As part of the settlement agreement, Katzner then assumed the subrogation rights of Gresser and its worker's compensation insurance carrier.

agreed to procure insurance which would cover such negligence claims." *Katzner v. Kelleher Constr.*, 535 N.W.2d 825, 828 (Minn. App.1995). Ellerbe now raises the same issue in this court, arguing that the court of appeals and the district court misinterpreted its contracts with Spancrete and Kelleher.

## II.

Ellerbe asserts that the contract and the General Conditions of Construction clearly require Kelleher and Spancrete to indemnify Ellerbe from all claims, irrespective of whether the claims arise out of Ellerbe's own negligence. Ellerbe argues that this duty not only arises out of the indemnification language of paragraph 2.17, but also the agreement to procure general liability insurance to protect Ellerbe in paragraphs 10.1.1 and 10.1.3. Kelleher and Spancrete disagree with Ellerbe's interpretation of the contractual provisions, arguing that neither the indemnification agreement in paragraph 2.17 nor the insurance agreement in paragraphs 10.1.1 and 10.1.3 requires them to protect Ellerbe from the financial consequences of Ellerbe's own negligent acts.

Until 1984, Minnesota law permitted construction contractors and subcontractors to employ indemnification clauses within their contracts whereby the indemnitee would be indemnified from all claims, including those claims arising out of its own negligence. *Johnson v. McGough Constr. Co.*, 294 N.W.2d 286, 287–88 (Minn.1980); *Farmington Plumbing & Heating Co. v. Fischer Sand & Aggregate, Inc.*, 281 N.W.2d 838, 842 (Minn.1979). In *Farmington*, this court adopted a "strict construction" standard, thereby requiring that agreements to indemnify the indemnitee from its own negligent acts clearly and unequivocally demonstrate such an intent. *See also National Hydro Sys. v. M.A. Mortenson Co.*, 529 N.W.2d 690, 694 (Minn.1995) (requiring an unequivocal expression of indemnity for losses occasioned by the negligence of the indemnitee).

■ Any such indemnity agreement signed after August 1, 1984, however, is subject to the restrictions of Minn.Stat. § 337.02 (1994). This statute provides that indemnification agreements in building and construction contracts are "unenforceable except to the extent that the underlying injury or damage is attributable to the negligent or otherwise wrongful act or omission, including breach of a specific contractual duty, of the promisor or the promisor's independent contractors, agents, employees, or delegatees." *Id.* Thus, an attempt to indemnify a party to a construction contract from liability for its own actions can no longer be enforced under Minnesota law. This provision ensures that each party will remain responsible for its own negligent acts or omissions. *See Holmes v. Watson–Forsberg Co.*, 488 N.W.2d 473, 475 (Minn.1992).

■ The legislature has established a narrow exception to the general prohibition of indemnification from the indemnitee's own negligence. Section 337.02 "do[es] not affect the validity of agreements whereby a promisor agrees to provide specific insurance coverage for the benefit of others." Minn.Stat. § 337.05, subd. 1 (1994). Accordingly, in *Holmes*, this court upheld a construction contract which required the subcontractor to provide insurance coverage for all damages and injuries, including "claims for which the Contractor may be or may be claimed to be, liable." 488 N.W.2d at 474. In that case we considered the combined effect of sections 337.02 and 337.05, and determined that even though an indemnification provision may be unenforceable under section 337.02, a promise to purchase insurance to cover any negligent acts by the promisee is valid and enforceable. *Id.* at 475.

■ In this case, however, we are not persuaded by Ellerbe's argument that Kelleher and Spancrete are financially responsible for Ellerbe's own liability to Linus Katzner. Ellerbe relies upon the language of paragraph 2.17 as evidence of the parties' intent to completely relieve Ellerbe from liability for all claims, however derived. Quoting from the contract in its brief, Ellerbe claims that this paragraph "expressly provides that the contractor will indemnify and hold Ellerbe harmless from any claims, damage, loss or expense 'regardless of whether or not it is caused in part by a party indemnified hereunder.'"

We do not agree that this language clearly and unequivocally shifts liability for all such claims from Ellerbe to Kelleher and Spancrete. The phrase "regardless of whether or not [the claim] is caused in part by a party indemnified hereunder" contained in paragraph 2.17 is not equivalent to the indemnity provisions at issue in *Holmes* which clearly protected the indemnitee from "all such claims including * * * claims for which the Contractor may be or may be claimed to be, liable." *Holmes*, 488 N.W.2d at 474. As the parties in this case have demonstrated, paragraph 2.17 can be read in two ways: *either* as an agreement to indemnify Ellerbe from all claims regardless of who is at fault, *or* as an agreement to only indemnify Ellerbe from claims caused "in whole or in part by any negligent act or omission of the Contractor," its subcontractors, and its employees. *See National Hydro Sys.*, 529 N.W.2d at 694 (holding indemnity provision equivocal). Therefore, we find that the language of paragraph 2.17 is, at best, ambiguous as to whether it was intended to indemnify Ellerbe from claims arising out of Ellerbe's own acts. And as we have often noted, "the rule is clear that when the meaning of an agreement is uncertain all doubts and ambiguities must be resolved against the one who prepared it," which in this case is Ellerbe. *Salminen v. Frankson*, 309 Minn. 438, 442, 245 N.W.2d 839, 841 (1976) (citing *Wick v. Murphy*, 237 Minn. 447, 54 N.W.2d 805 (1952)).

### III.

Nonetheless, even if the language of paragraph 2.17 was clearly and unequivocally intended to indemnify Ellerbe from its own negligence, section 337.02 would prohibit Minnesota courts from enforcing it. Therefore, the heart of this case lies in the correct interpretation of the parties' agreement to purchase insurance in paragraphs 10.1.1 and 10.1.3. The court of appeals held that "[u]nder the insurance procurement provision here, Kelleher and Spancrete must procure insurance only against claims arising from their own operations." *Katzner*, 535 N.W.2d at 829. We agree. Paragraph 10.1.1 re-

quires Kelleher and Spancrete to purchase comprehensive general liability insurance to protect themselves and Ellerbe from claims "which may arise out of or result from the Contractor's [Kelleher and Spancrete] operations under the Contract * * * whether such operations be by himself or by any Subcontractor or by anyone directly or indirectly employed by any of them or by anyone for whose acts any of them may be liable." This language does not require Kelleher and Spancrete to purchase insurance for claims arising out of Ellerbe's operations, Ellerbe's acts or Ellerbe's omissions. Instead, it is clearly intended to protect Ellerbe from claims arising out of the activities of Kelleher, Spancrete and any subcontractors or employees working "downstream" from them.

Without an agreement to procure insurance coverage for any claims arising out of Ellerbe's own negligence, any attempt by the parties to relieve Ellerbe from liability for its own acts and operations cannot be enforced. In light of our decision, we do not address the issue raised by Gresser in its conditional petition for review.[3]

Affirmed.

ANDERSON, J., took no part in the consideration or decision of this case.

---

3. Gresser has requested that this court define the extent of its own liability to Kelleher under its subcontract agreement, but only if we reversed the court of appeals by determining that Kelleher was liable for Ellerbe's negligence.