**ENGINEERING & CONSTRUCTION INNOVATIONS, INC., Appellant,**

v.

**L.H. BOLDUC CO., INC., Respondent,**

**The Travelers Indemnity Company of Connecticut, Respondent.**

No. A11–159.

Court of Appeals of Minnesota.

Sept. 6, 2011.

David D. Hammargren, Adina R. Bergstrom, Hammargren & Meyer, P.A., Bloomington, MN, for appellant.

Louise A. Behrendt, Michael S. Kreidler, Stich, Angell, Kreidler, Dodge & Unke, Minneapolis, MN, for respondent L.H. Bolduc Co., Inc.

John Paul J. Gatto, Daniel A. Haws, Stacy E. Ertz, Murnane Brandt, St. Paul, MN, for respondent The Travelers Indemnity Company of Connecticut.

Considered and decided by CONNOLLY, Presiding Judge; KLAPHAKE, Judge; and MUEHLBERG, Judge.

## OPINION

MUEHLBERG, Judge.*

This case comes to us on appeal from a district court's award of summary judgment in favor of a subcontractor and an insurer on a general contractor's breach-of-contract and declaratory-judgment actions. Because ECI's reply brief raises an issue not raised in its principal brief, we grant the subcontractor's motion to strike certain portions of the reply brief. Because the district court erred by concluding that the subcontractor and insurer's obligations were limited to damage caused by the subcontractor's negligence, we reverse and remand.

---

* Retired judge of the district court, serving as judge of the Minnesota Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 10.

## FACTS

This case arises out of litigation stemming from damage to a pipeline following a construction project. Frontier Pipeline, LLC was hired by Metropolitan Counsel Environmental Services (MCES) as the prime contractor for a construction project located in White Bear Lake, White Bear Township, and Hugo (the project). Frontier subcontracted portions of the project to appellant Engineering & Construction Innovations, Inc. (ECI), including the installation of a lift station and the installation of Forcemain access structures at various locations along the route of the pipeline. ECI hired respondent L.H. Bolduc Co. (Bolduc) to furnish, drive, and remove sheeting cofferdams required as part of ECI's responsibilities under the project.

Pursuant to the terms of the subcontract agreement, Bolduc was required to purchase and maintain various types of insurance policies with specified liability limits during the project. Bolduc also was required to include ECI as an additional insured under its commercial general liability (CGL) policy. Respondent The Travelers Indemnity Company of Connecticut (Travelers) was the insurer on the CGL policy. The policy was effective at all times relevant to this appeal. Travelers issued an endorsement to the policy covering ECI as an additional insured.

In late 2007, Bolduc furnished and drove sheeting in connection with ECI's construction of Forcemain Access Structure No. 1 (FAS–1). While doing this work, the sheeting struck and damaged the pipeline, which had been previously installed by Frontier. ECI discovered the damage to the pipeline and provided Bolduc and Travelers with written notice of the damage. MCES and Frontier demanded that ECI repair the damage to the pipeline; immediate repair was necessary to ad-

vance the project toward completion and to avoid assessment against ECI of liquidated damages of $5,000 per day. ECI incurred expenses of $235,339.89 in repairing the pipeline.

In March 2008, ECI submitted to Travelers a claim under the CGL policy seeking reimbursement of the expenses. Travelers denied the claim. The subcontract agreement between ECI and Bolduc called for ECI to pay Bolduc $32,513.29 for Bolduc's work on the project. ECI notified Bolduc that it was assessing a backcharge for the costs incurred in repairing the pipeline, and claimed that Bolduc owed ECI $202,826.60, representing the difference between the repair expenses incurred by ECI and the amount owed to Bolduc on the subcontract agreement.

ECI filed suit, alleging breach of contract and negligence against Bolduc and breach of contract and declaratory judgment against Travelers. Travelers filed a counterclaim for declaratory judgment, and Bolduc filed a counterclaim alleging breach of contract.

In November 2009, the district court bifurcated ECI's negligence claim from the remaining claims. In March 2010, the parties stipulated that the only issues to be tried to the jury were "(a) ECI's claim that Bolduc's negligence resulted in damage to the pipe at FAS–1 on the [project], (b) Bolduc's defense that it was ECI's negligence that resulted in damage to the pipe, and (c) the amount of damages, if any, to which ECI is entitled if it prevails on its negligence claim." The stipulation went on to state that ECI's claims against Bolduc for breach of contract and its claims against Travelers would be preserved for determination or resolution by the district court at a later date. Following trial, the jury returned a special verdict form finding that Bolduc was not negligent and that

ECI was not entitled to any money for its loss resulting from damage to the pipeline.

After the jury returned its verdict, ECI and Bolduc brought cross-motions for summary judgment on the remaining breach-of-contract claims. ECI and Travelers also brought cross-motions for summary judgment on the indemnification issue. The district court concluded that because a jury had determined that Bolduc was not negligent and the contract only required Bolduc to indemnify and insure appellant from damages caused by Bolduc's negligence, Bolduc had not breached its contract with ECI. Under similar reasoning, the district court concluded that Travelers was not required to indemnify and insure ECI for the damage to the pipeline. The district court granted Bolduc and Travelers' motions for summary judgment; denied appellant's motions for summary judgment; and awarded Bolduc $45,965.53, plus prejudgment interest, on its breach-of-contract claim against appellant. This appeal follows.

### ISSUES

1. Did the district court err by granting summary judgment in favor of Bolduc?

2. Did the district court err by granting summary judgment in favor of Travelers?

3. Is ECI's argument that reversal of the district court's award of summary judgment in favor of Bolduc require reversal of the district court's award of $45,965.53 to Bolduc on Bolduc's counterclaim properly before this court on appeal?

### ANALYSIS

■ A motion for summary judgment shall be granted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that either party is entitled to judgment as a matter of law." Minn. R. Civ. P. 56.03. On an appeal from summary judgment, a reviewing court asks "whether the district court properly applied the law and whether there are genuine issues of material fact that preclude summary judgment." *Riverview Muir Doran, LLC v. JADT Dev. Grp., LLC*, 790 N.W.2d 167, 170 (Minn. 2010). An appellate court reviews both questions de novo, viewing the evidence in the light most favorable to the party against whom judgment was granted. *STAR Ctrs., Inc. v. Faegre & Benson, L.L.P.*, 644 N.W.2d 72, 76–77 (Minn.2002). An award of summary judgment will be affirmed if it can be sustained on any ground. *Winkler v. Magnuson*, 539 N.W.2d 821, 827–28 (Minn.App.1995), *review denied* (Minn. Feb. 13, 1996).

### I.

■ The indemnity language in the contract between ECI and Bolduc provides as follows:

[Bolduc] agrees to protect, indemnify, defend, and hold harmless ECI ... to the fullest extent permitted by law and to the extent of the insurance requirements below, from and against (a) all claims, causes of action, liabilities, obligations, demands, costs, and expenses arising out of injury to any persons or damages to property caused or alleged to have been caused by any act or omission of [Bolduc], its agents, employees or invitees, and (b) all damage, judgments, expenses, and attorney's fees caused by any act or omission of [Bolduc] or anyone who performs work or services in the prosecution of the Subcontract. [Bolduc] shall defend any and all suits brought against ECI ... on account of any such liability or claims of liability. [Bolduc] agrees to procure and carry until the completion of the Subcontract,

workers compensation and such other insurance that specifically covers the indemnity obligations under this paragraph, from an insurance carrier which ECI finds financially sound and acceptable, and to name ECI as an additional insured on said policies.

The Minnesota Legislature has provided that an indemnification agreement contained in or executed in connection with a building and construction contract is unenforceable except to the extent that "the underlying injury or damage is attributable to the negligent or otherwise wrongful act or omission, including breach of a specific contractual duty, of the promisor or the promisor's independent contractors, agents, employees, or delegatees" or the agreement involves indemnification with respect to strict liability under environmental laws not relevant to this appeal. Minn.Stat. § 337.02 (2010). Under the statute, an attempt to indemnify a party to a construction contract from liability for that party's own actions is unenforceable in Minnesota. *Katzner v. Kelleher Constr.*, 545 N.W.2d 378, 381 (Minn.1996). "This provision ensures that each party will remain responsible for its own negligent acts or omissions." *Id.*

But section 337.02 does "not affect the validity of agreements whereby a promisor agrees to provide specific insurance coverage for the benefit of others." Minn.Stat. § 337.05, subd. 1 (2010). "[T]he legislature both anticipated and approved a longstanding practice in the construction industry by which the parties to a subcontract could agree that one party would purchase insurance that would protect 'others' involved in the performance of the construction project." *Holmes v. Watson–Forsberg Co.*, 488 N.W.2d 473, 475 (Minn. 1992). For practical purposes, section 337.05 operates as an exception from section 337.02's general prohibition. *Id.*

The district court concluded that section 337.05 was not at issue in the present case "because [the contract between Bolduc and ECI] does not require Bolduc to obtain insurance coverage extending to ECI's own negligence." But this is not the critical inquiry into the application of section 337.05. Under its plain language, the statute applies when a subcontract sets forth or specifies the type of insurance required from the subcontractor.

Bolduc responds to the argument regarding application of section 337.05 in a footnote, stating that "[b]ecause the district court properly refused to imply an indemnity obligation, it also properly refused to impose a theoretical obligation upon Bolduc to insure ECI for its own negligence." We read this argument as relying on this court's opinion in *Holmes*, concluding that agreements to indemnify for another's negligence were unenforceable, regardless of whether there was a concomitant agreement to insure. *See Holmes v. Watson–Forsberg Co.*, 471 N.W.2d 109, 112 (Minn.App.1991) (explaining that "[b]ecause the indemnification agreement is not enforceable, there is nothing to insure"), *rev'd*, 488 N.W.2d 473. But in reversing this court's decision, the supreme court rejected this approach, stating that the practice "is a practical response to problems inherent in the performance of a subcontract" and noting that "the parties are free to place the risk of loss upon an insurer by requiring one of the parties to insure against that risk." 488 N.W.2d at 475. While Bolduc also relies on *Farmington Plumbing & Heating Co. v. Fischer Sand & Aggregate, Inc.*, 281 N.W.2d 838, 842 (Minn.1979), that case was decided five years before chapter 337 went into effect. 1983 Minn. Laws, ch. 333, §§ 1–6, at 2135–37 (effective May 1, 1984).

Under the supreme court's decision in *Holmes*, construction agreements in which a subcontractor agrees both to indemnify for another's negligence and to insure that risk—such as the agreement at issue in the present case—are enforceable under sections 337.02 and 337.05. And though the supreme court has characterized Minn. Stat. § 337.05 as a "narrow exception to the general prohibition of indemnification from the indemnitee's own negligence," *Katzner*, 545 N.W.2d at 381, the court itself has acknowledged the common practice in the construction industry of requiring subcontractors to insure their indemnification obligations. *See Hurlburt v. N. States Power Co.*, 549 N.W.2d 919, 923 (Minn.1996) (observing that such practice had become "customary"). Thus, the "narrow exception" appears to have swallowed the rule.

The caselaw since *Holmes* makes clear that the specific statutory language employed will determine whether there is an enforceable agreement to indemnify and insure against another's negligence. In *Holmes*, the supreme court found enforceable language requiring indemnification and insurance for claims including those "for which the Contractor may be or may be claimed to be, liable." 488 N.W.2d at 474. In two later cases, however, the court held that the contractual language at issue did not impose duties to insure and indemnify. In *Hurlburt*, a rider to the contract expressly limited the indemnification obligation to injuries or damages "attributable to the negligence or otherwise wrongful act or omission . . . of [the subcontractor] or [its sub-subcontractors]." 549 N.W.2d at 922. And in *Katzner*, the court held ambiguous language requiring indemnification and insurance for claims "regardless of whether or not [the claim] is caused in part by a party indemnified hereunder." 545 N.W.2d at 382 (alteration in original).[1]

In this case, the subcontract employs language that is similar to that approved by the supreme court in *Holmes*.[2] It therefore appears that the district court

---

1. The court explained that the language could be "read in two ways: *either* as an agreement to indemnify [the contractor] from all claims regardless of who is at fault, *or* as an agreement to indemnify [the contractor] from claims caused 'in whole or in part by any negligent act or omission of the [subcontractor],' its [sub-]subcontractors and its employees." 545 N.W.2d at 382. Three years later, this court held unambiguous and enforceable slightly modified language, requiring indemnification and insurance for claims "regardless of whether or not such claims . . . are caused *in whole* or in part by [indemnified party]." *McCarthy v. Target Stores*, Nos. C5–98–1194, C4–98–1297, 1999 WL 58568, at *7 (Minn.App. Feb. 3, 1999) (emphasis added), *review denied* (Minn. Apr. 28, 1999).

2. The complete language of the provision in *Holmes* states:

The Subcontractor agrees to assume entire responsibility and liability, to the fullest extent permitted by law, for all damages or injury to all persons, whether employees or otherwise, and to all property, arising out of it, resulting from or in any manner connected with, the execution of the work provided for in this Subcontract or occurring or resulting from the use by the Subcontractor, his agents or employees, of materials, equipment, instrumentalities or other property, whether the same be owned by the Contractor, the Subcontractor or third parties, and the Subcontractor, to the fullest extent permitted by law, agrees to indemnify and save harmless the Contractor, his agents and employees from all such claims including, without limiting the generality of the foregoing, claims for which the Contractor may be or may be claimed to be, liable and legal fees and disbursements paid or incurred to enforce the provisions of this paragraph and the Subcontractor further agrees to obtain, maintain and pay for such general liability insurance coverage and endorsements as will insure the provisions of this paragraph.
488 N.W.2d at 474–75.

misapplied the law by determining that section 337.05 did not apply in the present case, and the indemnification and insurance agreements are enforceable.

■ Having concluded that the indemnification-and-insurance agreement is enforceable, we next address Bolduc's argument that the district court properly granted summary judgment because the contract obligated Bolduc to indemnify and insure ECI only for actions arising out of Bolduc's own negligence. Under Bolduc's argument, because the jury found that Bolduc was not negligent, there can be no obligation to insure or indemnify ECI for the damage caused to the pipeline. But such an argument misconstrues the language of the contract. Under the language of the contract, Bolduc agreed to indemnify ECI from and against "all claims, causes of action, liabilities, obligations, demands, costs, and expenses arising out of ... damages to property caused *or alleged to have been caused* by any act or omission of [Bolduc], its agents, employees or invitees" and carry insurance to cover such an obligation. (Emphasis added.) In other words, Bolduc agreed to indemnify ECI without regard to fault. While an apportionment of fault would be relevant to the analysis under section 337.02 of the permissible extent of an indemnification obligation without a coextensive agreement to insure, because the indemnification and insurance obligations coincide, section 337.05 exempts the contract from the application of section 337.02.

To adopt Bolduc's argument would require us to read the word "negligence" into the insure-and-indemnify paragraph of the contract. We decline to do so. Because the contract required Bolduc to insure and indemnify ECI without regard to fault, the district court erred by concluding that the jury's finding that Bolduc was not negli-

gent extinguished its obligation under the contract. We therefore reverse the district court's award of summary judgment in favor of Bolduc and remand the matter to the district court for further proceedings not inconsistent with this opinion.

## II.

■ ECI also challenges the district court's award of summary judgment in favor of Travelers. The district court granted Travelers' motion for summary judgment based on its conclusion that "[u]nder the terms of the additional insured endorsement within the policy, ECI was only entitled to indemnity coverage for damage caused by Bolduc and not for damage caused by the independent acts or omissions of ECI."

■ But in insurance law, the plain language of the insurance policy is controlling. *Thommes v. Milwaukee Ins. Co.*, 641 N.W.2d 877, 879–80 (Minn.2002). We find the foreign case *J.A. Jones Constr. Co. v. Hartford Fire Ins. Co.*, 269 Ill.App.3d 148, 206 Ill.Dec. 728, 645 N.E.2d 980 (1995) particularly instructive. In *J.A. Jones*, the Illinois Appellate Court held that when an additional insured endorsement does not expressly limit coverage to a subcontractor's negligence, coverage for the general contractor under an additional insured endorsement similarly was not limited to such negligence. 206 Ill.Dec. 728, 645 N.E.2d at 982.

Here, Bolduc's ECI policy provided that Travelers would pay "those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies." At oral argument, Travelers argued that because the contract between ECI and Bolduc is not an "insured contract," Travelers has no liability in the instant case, presumably under § I(2)(b) of the ECI policy. But this argument re-

quires disregarding the additional insured endorsement. The endorsement amends the ECI policy to include as an insured "any person or organization that you agree in a written contract requiring insurance to include as an additional insured." (Quotation marks omitted.) The endorsement limits such coverage to situations where "the injury or damage is caused by acts or omissions of you or your subcontractor in the performance of your work to which the written contract requiring insurance applies." (Quotation marks omitted.) But contrary to Travelers' argument, the policy does *not* limit coverage to injury or damage caused by *negligent* acts or omissions. We decline Travelers' invitation to read the word "negligent" into the policy. And while a jury has found that Bolduc was not negligent in damaging the pipeline, this finding does not equate to a finding that Bolduc did not cause the damage to the pipeline.

Because ECI is an additional insured under the ECI policy issued to Bolduc by Travelers, and there has been no finding of fact that ECI damaged the pipeline, the district court misapplied the law in awarding summary judgment in Travelers' favor. We therefore reverse the district court's order in this regard, and remand for further proceedings not inconsistent with this opinion.

### III.

In its reply brief, ECI argues that our reversal of the district court's erroneous grant of summary judgment in Bolduc's favor—*see, infra,* § I—requires reversal of the district court's award of damages to Bolduc on Bolduc's breach-of-contract counterclaim. Bolduc moved to strike the portions of ECI's reply brief arguing for this reversal, asserting that the issue is not properly before us as it was not raised in ECI's principal brief.

"The reply brief must be confined to new matter raised in the brief of respondent." Minn. R. Civ.App. P. 128.02, subd. 4. If an issue has not been addressed in a party's principal brief, the issue cannot be revived by raising it in a reply brief. *McIntire v. State,* 458 N.W.2d 714, 717 n. 2 (Minn.App.1990), *review denied* (Minn. Sept. 28, 1990). "If an argument is raised in a reply brief but not raised in an appellant's main brief, and it exceeds the scope of the respondent's brief, it is not properly before this court and may be stricken from the reply brief." *Wood v. Diamonds Sports Bar & Grill, Inc.,* 654 N.W.2d 704, 707 (Minn.App.2002).

In *Wood,* the respondent moved to strike portions of the appellant's reply brief that argued that the district court erred by concluding that the appellant did not establish as a matter of law that the respondent's bankruptcy attorney should have provided appellant with notice of the dram-shop claim. *Id.* The respondent stated that appellant failed to raise the issue in its principal brief; the appellant contended that the respondent's claim in her brief that she complied with the notice requirement opened the door for the issue of whether her bankruptcy attorney should have served notice. *Id.* at 706–07. We granted respondent's motion to strike, holding that the respondent's general assertion in her brief that she satisfied the notice requirement was insufficient support for the appellant's specific attack in the reply brief on the bankruptcy attorney's failure to provide notice. *Id.* at 707.

In the present case, Bolduc's brief presents no argument regarding the counterclaim. Instead, Bolduc notes in a footnote that ECI does not challenge the district court's findings and conclusions relative to the counterclaim. ECI's argument in the reply brief that our reversal of the summary judgment in favor of Bol-

duc would also require reversal of the counterclaim award is a new argument beyond the scope of Bolduc's principal brief. We therefore grant Bolduc's motion to strike ECI's argument regarding the counterclaim from the reply brief, and we therefore decline to address the merits of ECI's argument.

### DECISION

Because Bolduc's indemnity and insurance obligations under the contract and Travelers' obligation under the insurance policy were not limited to damage attributable to Bolduc's negligence, the district court erred by awarding summary judgment in favor of respondents. We therefore reverse the district court's award of summary judgment in favor of respondents for the claims asserted by ECI, and remand the matter to the district court for further proceedings not inconsistent with this opinion.

Because the matter was not properly raised before this court on appeal, we do not address ECI's argument regarding the $45,965.53 award to Bolduc on Bolduc's breach of contract claim.

Reversed and remanded; motion granted.

CONNOLLY, Judge (dissenting).

I respectfully dissent. I would affirm the district court's grant of summary judgment in favor of Bolduc because our statutory prohibition against indemnifying parties for their own negligence prohibits ECI from being indemnified by Bolduc when Bolduc was specifically found not negligent by a jury and the jury awarded no damages to ECI. I would also affirm the district court's grant of summary judgment in favor of Travelers because the specific language of its endorsement limits its insurance coverage to the acts and omissions of

Bolduc, not any other alleged acts or omissions.

The phrase "caused by or *alleged* to have been caused by any act or omission" invites the mischief that Minn.Stat. § 337.02 (2010) is designed to avoid. Minn.Stat. § 337.02 does not permit a party to a construction contract to be indemnified for its own negligence. *See* Minn. Stat. § 337.02(1) (stating that indemnification agreements executed in connection with construction contracts are unenforceable except to extent that the injury or damage is attributable to negligence of promisor). In this case, the parties stipulated that the only issue to be tried to the jury was ECI's claim that Bolduc was negligent and Bolduc's defense that ECI was negligent. Finally, the jury had to find what, if any, damages that ECI was entitled to if it prevailed. Bolduc was found not negligent by the jury, and ECI was awarded no damages. Consequently, ECI is the only other party that could be negligent under the facts of the case. Therefore, Bolduc is being asked to indemnify ECI for its own negligence. This scenario is prohibited by statute.

I also do not believe that Minn.Stat. § 337.05 applies. This statute provides that a specific promise to purchase specific insurance coverage for the benefit of another is valid and enforceable regardless of Minn.Stat. § 337.02. "Agreements seeking to indemnify the indemnitee for losses occasioned by its own negligence[, however,] are not favored by the law and are not construed in favor of indemnification unless such intention is expressed in clear and unequivocal terms, or unless no other meaning can be ascribed to it." *Yang v. Voyagaire Houseboats, Inc.,* 701 N.W.2d 783, 791 (Minn.2005) (quotation omitted).

In this case there is no such specific, clear, and unequivocal term. If the parties truly intended the subcontract provision to

cover instances in which ECI could be indemnified for its own negligent acts, they needed to use the specific, clear, and unequivocal language that has been approved by the Minnesota Supreme Court in *Holmes v. Watson–Forsberg Co.,* 488 N.W.2d 473, 474–75 (Minn.1992). The language in *Holmes* is very different from the language in this case. In *Holmes,* the subcontractor promised to indemnify the contractor "for all damages or injury to all persons, whether employees or otherwise, and to all property, arising out of it, *resulting from or in any manner connected with, the execution of the work* provided for in this [contract]." 488 N.W.2d at 474 (emphasis added). Thus, the obligation to indemnify was tied to the broader nature of the work being performed under the subcontract and not to damages caused by the acts or omissions or alleged acts or omissions of a subcontractor.

As to Travelers, the issue is even simpler because the language dealing with any "alleged" acts or omissions is not found in the endorsement. The specific language of its additional insured endorsement is set forth below and reads, in pertinent part, as follows:

> BLANKET ADDITIONAL INSURED (CONTRACTORS OPERATIONS)
>
> This endorsement modifies insurance provided under the following:
>
> COMMERCIAL GENERAL LIABILITY COVERAGE PART
>
> 1. WHO IS AN INSURED—(Section II) is amended to include any person or organization that you agree in a "written contract requiring insurance" to include as an additional insured on this Coverage Part, but:
>
>   a) Only with respect to liability for "bodily injury," "property damage" or "personal injury"; and
>
>   b) If, and only to the extent that, the injury or damage is *caused by acts*

> *or omissions* of you or your subcontractor in the performance of "your work" to which the "written contract requiring insurance" applies. The person or organization does not qualify as an additional insured with respect to the independent acts or omissions of such person or organization.

(Emphasis added).

Read in the context of the parties in this case, the additional insurance coverage would be triggered (1) "only to the extent that," (2) damage was "caused by acts or omissions of [Bolduc]," but that (3) "[ECI] does not qualify as an additional insured with respect to the independent acts or omissions of [ECI]." This language makes it clear that the intent of the parties was that Travelers would provide coverage to ECI "only to the extent that" ECI became responsible for payment of damages due to improper acts or omissions of Bolduc, but that Travelers would not provide coverage to ECI for damages that resulted from ECI's independent actions, or the actions of some third party.

Reading this language any other way (or reading the words "acts or omissions" as advocated by ECI) disregards the policy and its intent, namely that ECI would be entitled to coverage only for Bolduc's negligent acts. Here, the jury determined that Bolduc was not negligent for causing the damage to the pipeline and that ECI was entitled to zero dollars in damages. The jury's verdict made it clear that Bolduc's actions did not cause the damage to the pipeline. As a result, no additional named-insured coverage is available to ECI under a plain and simple application of the language of the additional insured endorsement. Finally, acceptance of ECI's argument would lead to the unpractical and unintended result that ECI could

immunize itself from the risk of ever having to accept responsibility for its own negligent acts, thus defeating the whole purpose of Minn.Stat. § 337.02.

Because a jury found Bolduc not negligent and awarded no damages to ECI and Minn.Stat. § 337.02 would prohibit ECI from being indemnified for its own negligence, and because the indemnity provision does not comport with the requirements of Minn.Stat. § 337.05, I would affirm the district court's grant of summary judgment in favor of Bolduc.

Because the additional insured endorsement language does not require Travelers to provide coverage to ECI for Bolduc's non-negligent acts, I would affirm the district court's grant of summary judgment in favor of Travelers.