ENGINEERING & CONSTRUCTION
INNOVATIONS, INC.,
Respondent,

v.

L.H. BOLDUC CO., INC., Appellant,

The Travelers Indemnity Company
of Connecticut, Appellant.

No. A11–0159.

Supreme Court of Minnesota.

Jan. 23, 2013.

David D. Hammargren, Adina R. Bergstrom, Hammargren & Meyer, P.A., Bloomington, MN, for respondent.

Kay Nord Hunt, Bryan R. Feldhaus, Lommen, Abdo, Cole, King & Stageberg, P.A., Minneapolis, MN; and Louise A. Behrendt, Michael S. Kreidler, Stich, Angell, Kreidler, Dodge & Unke, P.A., Minneapolis, MN, for appellant L.H. Bolduc Co., Inc.

William M. Hart, Charles E. Spevacek, Damon L. Highly, Meagher & Geer, P.L.L.P., Minneapolis, MN; and Daniel A. Haws, Stacy E. Ertz, John Paul J. Gatto, Murnane Brandt, Saint Paul, MN, for appellant The Travelers Indemnity Company of Connecticut.

Dale O. Thornsjo, Johnson & Condon, P.A., Minneapolis, MN; and Lee H. Ogburn, Steven M. Klepper, Kramon & Graham, P.A., Baltimore, MD, for amicus curiae The American Insurance Association.

Curtis D. Smith, Moss & Barnett, A Professional Association, Minneapolis, MN, for amicus curiae The American Subcontractors Association.

Curtis D. Ruwe, Beth A. Jensen Prouty, Arthur, Chapman, Kettering, Smetak & Pikala, P.A., Minneapolis, MN, for amicus curiae The Property Casualty Insurance Association of America.

## OPINION

ANDERSON, G. BARRY, Justice.

This appeal asks us to determine whether appellants are obligated under an insurance policy and an indemnification provision in a construction contract to reimburse respondent Engineering and Construction Innovations, Inc. ("ECI") for expenses ECI incurred in repairing a damaged sewer pipeline. Appellant L.H. Bolduc Company, Inc. ("Bolduc"), the subcontractor of ECI, damaged a sewer pipe during the course of a construction project. After ECI repaired the damage, it sought reimbursement from Bolduc's insurer, appellant The Travelers Indemnity Company of Connecticut ("Travelers"), under an endorsement to Bolduc's commercial general liability policy naming ECI as an additional insured for liability "caused by acts or omissions" of Bolduc. Travelers denied coverage. ECI then sued Bolduc and Travelers for negligence and breach of contract to recover the costs ECI paid to repair the pipe. A jury found that Bolduc was not negligent, and awarded ECI zero dollars in damages. Following trial, the district court granted summary judgment in favor of Travelers and Bolduc on ECI's breach of contract claims, concluding that Travelers and Bolduc had no obligation to reimburse ECI for damages not caused by Bolduc. The court of appeals reversed, determining that ECI was entitled to coverage as an additional insured without regard to Bolduc's fault. The court also concluded that Bolduc was required to indemnify ECI, and that the subcontract between ECI and Bolduc did not violate Minn.Stat. § 337.02 (2012), which prohibits indemnification for the fault of others in construction contracts. Because we conclude that ECI did not qualify as an additional insured with respect to the pipe damage and that Bolduc cannot be required to indemnify ECI without violating Minn. Stat. § 337.02, we reverse.

*The Project*

The Metropolitan Council Environmental Services ("Met Council") hired Frontier Pipeline, LLC ("Frontier") as the general contractor on a construction project involving the installation of an underground sewer pipeline in Hugo. After Frontier installed the pipeline, Frontier subcontracted with respondent ECI to install a lift station and force main access structures at specified locations along the pipeline. An access structure provides access to points where two sections of pipeline meet, and is built to allow sections of the pipe to be connected and to provide manhole access to the pipeline.

*The Subcontract*

In order to excavate pits to construct the access structures without danger of the walls of the pits collapsing, ECI subcontracted with Bolduc to build "coffer-

dams," a shoring system created by driving metal sheeting into the ground to act as walls for the pits during excavation and construction. The sheets are driven separately but eventually interlock to form a rectangle shape, and provide lateral support to the walls of the pit.

In January 2007 ECI and Bolduc entered into a subcontract (the "subcontract") drafted by ECI, which provided that Bolduc would "[f]urnish, drive, and remove six . . . sheeting cofferdam[s]" over the pipeline at six locations. Under the subcontract, Bolduc was to drive the sheets "per ECI location."[1] Both ECI and Bolduc agree that "per ECI location" means that Bolduc was not responsible for determining where to drive the cofferdams, but that ECI would provide Bolduc with the location to place the access structures as well as the location of the underground pipeline.

Bolduc agreed, under the subcontract, to perform its work "efficiently, properly and promptly, in accordance with the terms and conditions of the General Contract, and in accordance with the schedule and sequence given it by ECI." Moreover, the subcontract indicated that "[n]o advice, recommendations or assistance that representatives of the Owner or ECI may give to [Bolduc] shall operate to relieve [Bolduc] from complete responsibility for such work as an independent contractor."

The subcontract also imposed insurance and indemnification obligations on Bolduc, including the following requirements:

[Bolduc] agrees to protect, indemnify, defend, and hold harmless ECI and Owner, to the fullest extent permitted by law and to the extent of the insurance requirements below, from and against (a) all claims, causes of action, liabilities, obligations, demands, costs, and expenses arising out of injury to any persons or damages to property caused or alleged to have been caused by any act or omission of [Bolduc], its agents, employees or invitees, and (b) all damage, judgments, expenses, and attorney's fees caused by any act or omission of [Bolduc] or anyone who performs work or services in the prosecution of the Subcontract. [Bolduc] shall defend any and all suits brought against ECI or Owner on account of any such liability or claims of liability. [Bolduc] agrees to procure and carry until the completion of the Subcontract, worker's compensation and such other insurance that specifically covers the indemnity obligations under this paragraph, from an insurance carrier which ECI finds financially sound and acceptable, and to name ECI as an additional insured on said policies.

. . . .

[Bolduc] agrees to obtain, maintain and pay for such insurance coverage and endorsements as will insure the indemnity provisions and coverage limits above and to furnish ECI certificates of insurance evidencing the aforementioned coverage.

The subcontract identified specific dollar amounts of coverage that the insurance policy was required to provide.

Bolduc obtained commercial general liability insurance from Travelers, which provided coverage during the time period at issue in the amounts required by the sub-

---

1. Under ECI's subcontract with the general contractor on the project, Frontier, ECI's scope of work indicated that "[s]urvey and layout of structure locations" would be "by others." ECI contends that as a result of this language Frontier was responsible for providing ECI with the location of the underground sewer pipeline. Because Frontier was never made a part of the instant lawsuit, the attempts by ECI to place blame upon Frontier are irrelevant to this appeal and speculative at best.

contract. Bolduc's insurance policy specifies that Travelers "will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies." The policy excludes coverage for bodily injury or property damage based on the insured's assumption of liability for such damages in a contract. But the policy does cover liability assumed in an "insured contract," defined in part as:

> That part of any other contract or agreement pertaining to your business ... under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third party or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

Bolduc is the named insured under the policy. The policy also includes a Blanket Additional Insured (Contractors) Endorsement, making ECI an additional insured eligible for coverage with respect to certain liabilities specified in the endorsement. The endorsement provides, in relevant part, that:

> 1. WHO IS AN INSURED—(Section II) is amended to include any person or organization that you [2] agree in a "written contract requiring insurance" [3] to include as an additional insured on this Coverage Part, but:

a) Only with respect to liability for "bodily injury", "property damage" or "personal injury"; and

b) If, and only to the extent that, the injury or damage is caused by acts or omissions of you or your subcontractor in the performance of "your work" to which the "written contract requiring insurance" applies. The person or organization does not qualify as an additional insured with respect to the independent acts or omissions of such person or organization.

(Footnotes added.)

### Damage to the Pipeline

In December 2007 ECI discovered the damage to the underground pipeline that gave rise to this dispute. At one of the cofferdam locations, one of Bolduc's metal sheets caused damage because it was driven through the edge of the pipe. All parties involved agree that Bolduc drove a sheet into the pipe, and that contact between the sheet and the pipe caused the resulting damage. At the site of the damage, ECI had provided the template and markings designating where Bolduc was to drive the sheeting cofferdams as required by the subcontract.

ECI notified Met Council, Frontier, Bolduc, and Travelers of the damaged pipe. Frontier, acting on behalf of Met Council, directed ECI to repair the pipe.[4] Over the

2. For purposes of this section of the policy, the words "you" and "your" refer to Bolduc, the named insured in the declaration.

3. "Written contract requiring insurance" is defined as:

> that part of any written contract or agreement under which you are required to include a person or organization as an additional insured on this Coverage Part, provided that the "bodily injury" and "property damage" occurs and the "per-

sonal injury" is caused by an offense committed:
> a. After the signing and execution of the contract or agreement by you;
> b. While that part of the contract or agreement is in effect; and
> c. Before the end of the policy period.

4. The contract between Frontier and ECI contains an insurance and indemnity provision identical to the one found in the subcontract between ECI and Bolduc. Frontier and ECI's contract also contains a provision allowing

next several months, ECI allegedly spent $235,339 to repair the pipe. ECI then refused to pay Bolduc the remaining amount due to Bolduc under the subcontract.

In March 2008 ECI submitted a claim to Travelers seeking reimbursement of the pipe repair expenses as an additional insured under the endorsement in Bolduc's policy. Travelers refused to reimburse ECI, claiming that Bolduc was not the cause of the damage, and therefore ECI's claim did not fall within the coverage provided by the additional insured endorsement.

*The Lawsuit*

In August 2008 ECI filed a lawsuit against Bolduc and Travelers. ECI's complaint alleged that the damage to the pipe was caused by Bolduc's negligence. ECI also claimed that Bolduc had breached the subcontract by failing to perform its work properly and by failing to indemnify ECI.[5] ECI also alleged that Travelers had breached its insurance contract when it refused to provide coverage to ECI as an additional insured.

Before trial, the parties entered into a stipulation bifurcating the negligence and breach of contract claims. Pursuant to the stipulation, the only issues to be tried to the jury were "(a) ECI's claim that Bolduc's negligence resulted in damage to the pipe at FAS–1 on the Met Council Project, (b) Bolduc's defense that it was ECI's

negligence that resulted in damage to the pipe, and (c) the amount of damages, if any, to which ECI is entitled if it prevails on its negligence claim." The parties further agreed that:

> ECI's claims against Bolduc for breach of contract (including but not limited to ECI's claim that Bolduc breached its obligation to defend and indemnify ECI and obtain insurance to protect ECI), and ECI's claims against Travelers, shall not be tried ... but shall be preserved in full for determination or resolution by the Court at a later date. . . . ECI's claims against Bolduc for breach of contract and ECI's claims against Travelers shall be resolved on crossmotions for summary judgment. If it is determined that there are disputed issues of material fact, these claims will be tried to the Court without a jury. The parties expressly waive their rights to have these claims decided by a jury.

The stipulation also provided that Travelers would not participate in the trial.

After a 3–day trial, the jury returned a special verdict using a form that had been proposed by Bolduc, and not objected to by ECI. The jury answered two questions. In response to the question "Was [Bolduc] negligent?" the jury answered "No." According to the special verdict form, the jury did not answer the question "Was [ECI] negligent?" because it had found that Bolduc was not negligent. The spe-

---

Frontier to assess liquidated damages against ECI for delays in completion of the project. The liquidated damages provision in the contract between Frontier and ECI does not specify when and in what amounts such damages may be assessed, but provides that "ECI agrees that the damages provisions of the General Contract, both actual and liquidated, shall be enforceable by [Frontier Pipeline] against ECI." The general contract (between Met Council and Frontier) does not appear in the appellate record.

5. In its answer to ECI's complaint, Bolduc asserted a counterclaim against ECI to recover $45,965 in unpaid costs and services provided to ECI under the subcontract. ECI later agreed that it had paid Bolduc "all but $45,965.53 otherwise owed for work on the project." ECI therefore "applied this remaining balance to offset a portion of the cost it incurred to repair the damaged pipe." ECI's obligation to pay Bolduc under the subcontract is not at issue in this appeal.

cial verdict form also asked "What sum of money will fairly compensate [ECI] for its loss resulting from damage to the pipe?" to which the jury answered "$0." The district court had previously instructed the jury that "[w]hen you decide damages, do not consider the possible effect of your answers to other questions."

*Summary Judgment Motions*

Following trial, ECI brought motions for summary judgment on its claims against Travelers as well as its breach of contract claims against Bolduc. ECI did not submit a memorandum or any evidence in support of its motions for summary judgment.

Travelers also brought a motion for summary judgment, asking the court to find that the additional insured endorsement did not provide coverage to ECI. Travelers argued that ECI was only entitled to coverage as an additional insured to the extent damage was " 'caused by an act or omission' of Bolduc." Because a jury determined that Bolduc was not negligent, Travelers urged the court to conclude that the damage to the pipe was not "caused" by Bolduc, and ECI was therefore not entitled to coverage.

In response to Travelers' motion, ECI asserted that the plain language of the additional insured endorsement provided coverage to ECI "because it is undisputed that Bolduc did, in fact, hit the pipe," and therefore "the damage was, by definition, caused by Bolduc's 'acts or omission.' " ECI argued that Travelers' interpretation of the policy essentially rewrote the policy to include coverage only for Bolduc's "*negligent* acts or omissions." In the alternative, ECI argued that the endorsement was ambiguous, and should be construed in favor of providing coverage.

Bolduc also brought a motion for summary judgment, arguing that the indemnity provision in the subcontract was unenforceable because any obligation to indemnify ECI violated Minn.Stat. § 337.02 (2012). Under Minn.Stat. § 337.02, indemnity of a party to a construction contract other than for liability arising from the promisor's own wrongful conduct is not enforceable. An exception in Minn.Stat. § 337.05 (2012), however, provides that section 337.02 "do[es] not affect the validity of agreements whereby a promisor agrees to provide specific insurance coverage for the benefit of others." Bolduc therefore argued that any requirement in the subcontract obligating Bolduc to indemnify ECI that extended beyond the required provision of insurance would be prohibited by Minn.Stat. § 337.02. In the alternative, Bolduc argued that the indemnity provision did not implicate sections 337.02 and 337.05 at all, because the subcontract did not require Bolduc to indemnify ECI for ECI's own negligence. Bolduc also alleged that it was not in breach of the subcontract because it had obtained the insurance required by the subcontract.

In response to Bolduc's motion, ECI argued that because Bolduc hit the pipe, "Bolduc is obligated to indemnify ECI to the extent the damages were caused by 'any act or omission' on its part, negligent or otherwise." Moreover, ECI argued that the subcontract did not require Bolduc to indemnify ECI for its own negligence because "there has never been a judicial determination that ECI was negligent." Instead, ECI contended that Bolduc was required to indemnify ECI based on Bolduc's "act or omission" in breaching the terms of the subcontract requiring Bolduc to "perform its work in a good and workmanlike manner."

The district court granted the motions of Bolduc and Travelers in their entirety, dismissing ECI's claims with prejudice.

With respect to ECI's claims against Bolduc, the court determined that "Bolduc [wa]s not in breach of the indemnity provisions in [the sub]contract because the [sub]contract did not require Bolduc to indemnify ECI with regard to ECI's own negligence." The court further concluded that the subcontract "does not raise issues or concerns regarding Section 337.05 because it does not require Bolduc to obtain insurance coverage extending to ECI's own negligence. Instead, the [sub]contract clearly only obligates Bolduc to defend, indemnify, and insure ECI only with respect to *liabilities* resulting from Bolduc's own acts or omissions." With respect to ECI's claims against Travelers, the court concluded that because a jury had determined that Bolduc was not the cause of the damage, ECI was not entitled to coverage as an additional insured because ECI was only entitled to coverage for damage caused by Bolduc and "not for damage caused by the independent acts or omissions of ECI."

*The Court of Appeals Opinion*

The court of appeals reversed. *Eng'g & Constr. Innovations, Inc. v. L.H. Bolduc Co.*, 803 N.W.2d 916 (Minn.App.2011). The court first determined that the indemnity and insurance clause in the subcontract was enforceable under Minn.Stat. § 337.02. 803 N.W.2d at 922–23. Because Bolduc's indemnification obligation was "coextensive" with its obligation to procure insurance, the court concluded that the indemnity and insurance clause met the exception language in Minn.Stat. § 337.05, rendering the subcontract enforceable, even to the extent that it required Bolduc to indemnify ECI for ECI's own negligence. *Id.* In reaching this conclusion, the court reasoned that "the 'narrow exception' [in Minn.Stat. § 337.05] appears to have swallowed the rule" prohibiting indemnification from the indemnitee's own negligence. 803 N.W.2d at 922 (quoting

*Katzner v. Kelleher Constr.*, 545 N.W.2d 378, 381 (Minn.1996)). The court further determined that Bolduc "agreed to indemnify ECI from and against 'all claims ... arising out of ... damages to property caused *or alleged to have been caused* by any act or omission of [Bolduc],'" which required Bolduc "to indemnify ECI without regard to fault." *Id.* at 923. Therefore, the court of appeals determined that the district court erred "by concluding that the jury's finding that Bolduc was not negligent extinguished its obligation under the [sub]contract[,]" and reversed the district court's grant of summary judgment. *Id.*

The court of appeals then determined that ECI was an additional insured under the Travelers policy for purposes of the pipe damage. Because the policy limited ECI's coverage to damage caused by the "acts or omissions of Bolduc," and not to the *"negligent* acts or omissions of Bolduc," the court concluded that the policy provided coverage for ECI despite the jury verdict finding Bolduc not negligent. *Id.* at 924. Therefore, the court of appeals reversed the grant of summary judgment in favor of Travelers. *Id.*

In dissent, Judge Connolly asserted that the majority's interpretation of the insurance and indemnification clause "invites the mischief that Minn.Stat. § 337.02 ... is designed to avoid." 803 N.W.2d at 925 (Connolly, J., dissenting). The dissent concluded that because there was no "specific, clear, and unequivocal" language in the subcontract indicating that the "parties truly intended the [insurance and indemnity] provision to cover instances in which ECI could be indemnified for its own negligent acts," the subcontract should not be interpreted to require indemnification when Bolduc was not liable for the damage. *Id.* at 925–26. Additionally, the dissent determined that the endorsement pro-

vided coverage to ECI as an additional insured only to the extent the damage was caused by the improper acts or omissions of Bolduc. *Id.* at 926. Because a jury found that Bolduc had no liability for the pipe damage, the dissent concluded that ECI was not an additional insured.

Travelers and Bolduc petitioned our court for review, and we granted review on both petitions. This appeal raises two primary issues: (1) whether ECI is entitled to coverage as an additional insured under the Travelers policy for costs incurred in repairing the pipe; and (2) whether ECI is entitled to reimbursement for the pipe repairs from Bolduc under the indemnification provision in the contract.

■■■ We review de novo the district court's grant of summary judgment to Travelers and Bolduc. *See Riverview Muir Doran, LLC v. JADT Dev. Grp. LLC,* 790 N.W.2d 167, 170 (Minn.2010). On review, "our task is to determine whether genuine issues of material fact exist, and whether the district court correctly applied the law." *Savela v. City of Duluth,* 806 N.W.2d 793, 796 (Minn.2011). A genuine issue of material fact " 'must be established by substantial evidence.' " *DLH, Inc. v. Russ,* 566 N.W.2d 60, 69–70 (Minn.1997) (quoting *Murphy v. Country House, Inc.,* 307 Minn. 344, 351, 240 N.W.2d 507, 512 (1976)). On appeal from a grant of summary judgment, "we view the evidence in the light most favorable to the party against whom summary judgment was granted[.]" *Sampair v. Vill. of Birchwood,* 784 N.W.2d 65, 68 (Minn.2010). Summary judgment is appropriate when the party opposing summary judgment "bears the burden of proof on an element essential to [that] party's case," and the party fails to "make a showing sufficient to establish that essential element." *Russ,* 566 N.W.2d at 71 (citing *Celotex Corp. v.*

*Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)).

## I.

■■ We turn first to the issue of whether ECI is entitled to coverage as an additional insured under Bolduc's insurance policy. Travelers argues that ECI does not qualify as an additional insured under the policy with respect to costs ECI incurred in repairing the pipe. First, Travelers argues that because a jury found that Bolduc was not negligent, the pipe damage was not "caused by acts or omissions of [Bolduc]," foreclosing ECI from satisfying the requirements for coverage as an additional insured. Second, Travelers asserts that even if ECI qualifies as an additional insured, ECI did not meet its initial burden of establishing coverage under the policy because ECI was not legally obligated to incur costs in repairing the pipe. ECI disagrees, arguing that it is entitled to coverage.

■■ Interpretation of an insurance policy, and whether a policy provides coverage in a particular situation, are questions of law that we review de novo. *Leamington Co. v. Nonprofits' Ins. Ass'n,* 615 N.W.2d 349, 353 (Minn.2000); *State Farm Ins. Cos. v. Seefeld,* 481 N.W.2d 62, 64 (Minn. 1992).

■■■ The extent of an insurer's liability is governed by the language of the insurance policy. *Bobich v. Oja,* 258 Minn. 287, 294, 104 N.W.2d 19, 24 (1960). Our objective when interpreting insurance contracts is to "ascertain and give effect to the intentions of the parties as reflected in the terms of the insuring contract." *Jenoff, Inc. v. N.H. Ins. Co.,* 558 N.W.2d 260, 262 (Minn.1997). Where the language of an insurance policy "is clear and unambiguous," we effectuate the intent of the parties by "interpret[ing] the policy 'according to plain, ordinary sense.' " *Carlson v. All-*

*state Ins. Co.*, 749 N.W.2d 41, 45 (quoting *Canadian Universal Ins. Co. v. Fire Watch, Inc.*, 258 N.W.2d 570, 572 (Minn. 1977)). An insurance policy is ambiguous, however, "if it is susceptible to two or more reasonable interpretations." *Id.* We resolve ambiguous terms against the insurer, and construe such terms in favor of providing coverage to the insured. *Jenoff, Inc.*, 558 N.W.2d at 262. But we will not "read an ambiguity into the plain language of a policy in order to provide coverage." *Farkas v. Hartford Accident & Indem. Co.*, 285 Minn. 324, 327, 173 N.W.2d 21, 24 (1969). Moreover, we read the terms of an insurance contract "in the context of the entire contract," and do not construe terms so strictly "as to lead to a harsh and absurd result." *Emp'r Mut. Liab. Ins. Co. of Wis. v. Eagles Lodge of Hallock, Minn.*, 282 Minn. 477, 479–80, 165 N.W.2d 554, 556 (1969). We will not adopt a "construction of an insurance policy which entirely neutralizes one provision ... if the contract is susceptible of another construction which gives effect to all its provisions and is consistent with the general intent." *Wyatt v. Wyatt*, 239 Minn. 434, 437, 58 N.W.2d 873, 875 (1953).

▮▮▮▮ It is well-established "that the burden of proof rests upon the party claiming coverage under an insurance poli-

cy." *Boedigheimer v. Taylor*, 287 Minn. 323, 329, 178 N.W.2d 610, 614 (1970); *accord Travelers Indem. Co. v. Bloomington Steel & Supply Co.*, 718 N.W.2d 888, 894 (Minn.2006) (explaining that the insured under a liability policy "bears the initial burden of demonstrating coverage"). Therefore, "[i]n an action to determine coverage," the insured must "establish a prima facie case of coverage." *SCSC Corp. v. Allied Mut. Ins. Co.*, 536 N.W.2d 305, 311 (Minn.1995), *overruled on other grounds by Bahr v. Boise Cascade Corp.*, 766 N.W.2d 910 (Minn.2009). In any particular case, "[w]hat constitutes a prima facie showing of coverage depends on the language of the particular policy." *Id.*

In order to recover from Travelers, ECI must show that it is an insured under the policy. *See Lott v. State Farm Fire & Cas. Co.*, 541 N.W.2d 304, 308 (Minn.1995) (denying coverage where the claimant did not qualify as a resident of the named insured's household and therefore was not an insured under the policy).[6] The language of the additional insured endorsement at issue provides that ECI is an additional insured under the policy:

a) Only with respect to liability for "bodily injury", "property damage" or "personal injury"; and

---

**6.** As a preliminary matter, ECI argues that Travelers bears the burden of proof to show that ECI does not qualify as an additional insured under the endorsement. ECI contends that it has demonstrated a prima facie case of coverage because it has shown that "Bolduc (the named insured) admittedly hit (an *"act"*) and damaged (*"physical damage"*) the Pipe (*property* )." ECI therefore characterizes the language of the additional insured endorsement as an exclusion and argues that "Travelers now bears the onerous burden of proving that the damage to the Pipe falls within its exclusion and is not covered." ECI's argument misses the mark because under the additional insured endorsement, provided the requirements of the endorsement

are met, ECI becomes an insured in its *own* right, not derivatively entitled to insurance coverage due to Bolduc's liability. Therefore, to establish coverage ECI must show that it, not Bolduc, became a named insured through operation of the additional insured endorsement. ECI's argument would be relevant only if Bolduc had itself paid to repair the pipeline and was seeking to recover those costs under the policy. In that circumstance, Bolduc's status as a named insured would be essential to establish a prima facie case of coverage. Here, however, ECI must establish that it qualifies as an insured in order to recover under the policy, and the language of the additional insured endorsement is not properly characterized as an exclusion.

b) If, and only to the extent that, the injury or damage is caused by acts or omissions of [Bolduc] in the performance of "[its] work" to which the "written contract requiring insurance" applies. [ECI] does not qualify as an additional insured with respect to the independent acts or omissions of [ECI].

Travelers argues that the sole reasonable interpretation of the endorsement, when read as a whole, is that ECI can only obtain coverage for damages that result from Bolduc's fault. Travelers further contends that the plain meaning of "acts or omissions" in a liability insurance policy "cannot be divorced from the duty to act or from the standard by which the duty to act is either discharged or breached," and therefore requires some fault on the part of the acting party before insurance coverage is triggered. Because a jury found Bolduc not negligent with respect to the pipe damage, Travelers asserts that the cost to repair the damage is not "liability ... caused by acts or omissions of [Bolduc]" and ECI cannot obtain coverage.

ECI, however, argues that its coverage as an additional insured is not dependent upon a finding of Bolduc's fault. First, ECI argues that the phrase "acts or omissions" is unambiguous, and its plain meaning "contains no requirement of negligence as a precursor to triggering coverage." Therefore, because it is undisputed that it was the physical act of Bolduc that caused the sheeting cofferdam to come in contact with the pipe, ECI contends that coverage is provided under the policy. Second, ECI argues that even if "acts or omissions" is subject to more than one reasonable interpretation, we must resolve the ambiguity in favor of providing coverage. Finally, ECI asserts that even if some fault or liability must accompany Bolduc's acts or omissions in order for ECI to qualify as an additional insured, Bolduc was at fault in this case because Bolduc breached the subcontract with ECI by failing to perform its work in a proper manner when it damaged the pipe.[7]

■ ECI's argument concerning the scope of coverage provided by the additional insured provision focuses primarily on the meaning of "acts or omissions." But we do not construe individual words or phrases in insurance policies in isolation. Rather, when determining if an ambiguity truly exists we read the policy as a whole, *Henning Nelson Constr. Co. v. Fireman's Fund Am. Life Ins. Co.*, 383 N.W.2d 645, 653 (Minn.1986), and will "fastidiously guard against the invitation to create ambiguities where none exist[.]" *Columbia Heights Motors, Inc. v. Allstate Ins. Co.*, 275 N.W.2d 32, 36 (Minn.1979) (citations omitted) (internal quotation marks omitted). After reading the additional insured provision in the context of the entire insurance policy, we conclude that the phrase "caused by acts or omissions of [Bolduc]" is not ambiguous, because it is susceptible to only one *reasonable* interpretation. *See*

---

7. ECI also argues that Bolduc acted wrongfully in breaching the contractual agreement to indemnify ECI. This argument clearly misses the mark because even ECI does not contend that Bolduc's failure to indemnify ECI was an act that "caused" the property damage to the pipe, giving rise to ECI's insurance claim. ECI also argues that Bolduc breached the portion of the subcontract that "[n]o advice, recommendations or assistance that representatives of the Owner or ECI may give to [Bolduc] shall operate to relieve [Bolduc] from complete responsibility for such work as an independent contractor." It is also clear that this breach, if any, was not an act that "caused" the property damage under the plain language of the insurance policy. Again, Bolduc's failure to take responsibility to repair the pipe after the fact is not an act or omission that caused the damage at issue and therefore is outside the scope of the additional insured endorsement.

*Carlson,* 749 N.W.2d at 45 ("Language in a policy is ambiguous if it is susceptible to two or more reasonable interpretations."); *Bd. of Regents of Univ. of Minn. v. Royal Ins. Co. of Am.,* 517 N.W.2d 888, 892 (Minn.1994) ("Because a word has more than one meaning does not mean it is ambiguous. The sense of a word depends on how it is being used; only if more than one meaning applies within that context does ambiguity arise."). Based on the language of the additional insured endorsement, interpreted as a whole in light of its place within a liability insurance policy, we conclude that the language "caused by the acts or omissions of [Bolduc]" provides coverage to ECI as an additional insured only in instances of ECI's vicarious liability for Bolduc's negligent acts or omissions.[8]

The language of the additional insured provision indicates that ECI's coverage under the additional insured endorsement cannot be divorced from the concept of fault. ECI only qualifies as an additional insured under the endorsement if several conditions are met. First, as relevant here, ECI is an additional insured only "with respect to *liability* for ... 'property damage.'" (Emphasis added). Second, for

ECI to be covered under the policy, such liability for damage must have been "caused by acts or omissions of [Bolduc]." Third, ECI cannot be an additional insured with respect to liability caused by "the independent acts or omissions of [ECI]."

With respect to the first requirement, ECI qualifies as an additional insured only if ECI has liability for property damage. If ECI has no liability for property damage, then under the plain language of the additional insured endorsement, ECI is not entitled to coverage. ECI's liability for property damage could arise only in one of three ways.

First, ECI could have direct liability for property damage. "Direct liability is the imposition of liability when one party has breached a personal duty ... through his *own* acts of negligence." *Sutherland v. Barton,* 570 N.W.2d 1, 5 (Minn.1997) (emphasis added). Coverage for such direct liability is plainly excluded under part b of the additional insured endorsement, which provides that ECI is not an additional insured with respect to liability for damages caused by the "independent acts or omissions of [ECI]."[9]

8. We acknowledge that other courts have found additional insured provisions similar to the one at issue here to be ambiguous, *see Consolidation Coal Co. v. Liberty Mut. Ins. Co.,* 406 F.Supp. 1292, 1295 (W.D.Pa.1976), and some have resolved that ambiguity in favor of providing coverage to the additional insured. *See, e.g., Dillon Cos. Inc. v. Royal Indem. Co.,* 369 F.Supp.2d 1277, 1286–87 (D.Kan.2005); *Md. Cas. Co. v. Regis Ins. Co.,* No. CIV.A. 96–CV–1790, 1997 WL 164268, *5–7 (E.D.Pa. Apr. 9, 1997). These decisions are not binding on us. Moreover, none of these cases dealt with the precise wording of the additional insured provision present in this case. Notably, none of these decisions dealt with the language "[ECI] does not qualify as an additional insured with respect to the independent acts or omissions of [ECI]," or discussed the existence of an exclusion within

the policy for contractually assumed liabilities. Our determination that the additional insured provision at issue here is unambiguous is properly based on our reading of the precise wording of the provision as a whole, in the context of this particular insurance policy.

9. We note that our interpretation of this additional insured provision is consistent with our interpretation of the phrase "arising out of" in other insurance policies. In construing other policies, we have given the phrase "arising out of" a broad meaning in an additional insured provision, requiring only that a "but for" causal relationship exist between the actions of the named insured and the liability at issue before the additional insured was entitled to coverage. *Faber v. Roelofs,* 311 Minn. 428, 436–37, 250 N.W.2d 817, 822 (1977).

■ The second way in which ECI could be liable for property damage is if ECI is vicariously liable for property damage "caused by acts or omissions of [Bolduc]." Unlike direct liability, "vicarious liability is the 'imposition of liability on one person for the *actionable conduct of* another, based solely on a relationship between the two persons.'" *Sutherland,* 570 N.W.2d at 5 (emphasis added) (quoting *Black's Law Dictionary* 1566 (6th ed.1990)); *see also Farr v. Armstrong Rubber Co.,* 288 Minn. 83, 96, 179 N.W.2d 64, 72 (1970) (explaining that vicarious liability is "predicated on or derived from" the wrongful act of another). Liability can therefore only be imposed upon ECI for the acts or omissions of Bolduc if Bolduc *itself* could be liable for those acts or omissions. In other words, if Bolduc could not be liable in the first instance, ECI can have no vicarious liability, and no liability of any kind has been "caused." *See American Heritage Dictionary of the English Language* 295 (5th ed.2011) (defining caused as "[t]o be the cause of or reason for; result in"); *Webster's Third New International Dictionary* 356 (3d ed.1961) (defining cause as "to serve as cause or occasion of: bring into existence"). Therefore, it would be unreasonable to interpret "acts or omissions," as ECI suggests, without regard to fault, because if Bolduc has no liability for its own conduct, such con-

duct cannot be the cause of ECI's vicarious liability. Our interpretation is in accord with the reasoning of other courts that have interpreted similar provisions. *See MacArthur v. O'Connor Corp.,* 635 F.Supp.2d 112, 116–17 (D.R.I.2009) (concluding that an additional insured provision only provided coverage for the "acts and omissions" of the named insured to the extent that the additional insured was vicariously liable for the acts and omissions of the named insured); *Vulcan Materials Co. v. Cas. Ins. Co.,* 723 F.Supp. 1263, 1265 (N.D.Ill.1989) (concluding that additional insured coverage for liabilities "because of acts or omissions of an insured" was "plainly a vicarious liability provision and nothing more"); *Garcia v. Fed. Ins. Co.,* 969 So.2d 288, 294 (Fla.2007) (concluding that "the phrase 'any other person with respect to liability because of acts or omissions' of the named insured covers only an additional insured's vicarious liability for the negligent acts or omissions of the named insured"); *Huber Engineered Woods, LLC v. Canal Ins. Co.,* 364 N.C. 413, 700 S.E.2d 220, 221 (2010) (same). Because a jury determined that Bolduc was not liable for the pipe damage, ECI cannot recover under the additional insured provision under a theory of vicarious liability.

Finally, ECI could be liable for property damage "caused by acts or omissions of

Therefore, under such additional insured endorsements, an additional insured could receive coverage with respect to direct liability, to the extent that the actions of the named insured were the "but for" cause of that liability. The reading of the additional insured endorsement urged by ECI would require us to interpret "arising out of" and "caused by acts or omissions" of the named insured identically. But these phrases do not have identical meanings, because "arising out of" is much broader than additional insured language that limits recovery for liabilities with respect to "acts or omissions" of the named insured. *See Merchants Ins. Co. of N.H., Inc.*

*v. U.S. Fidelity and Guar. Co.,* 143 F.3d 5, 9–10 (1st Cir.1998) (concluding that "arising out of" in an additional insured provision did not limit coverage to those situations in which the additional insured was vicariously liable for the acts of the named insured, noting that the insurance company "was free to draft a policy with qualifying language that expressly implemented that intention" such as "but only with respect to acts or omissions of the named insured"); *Garcia v. Fed. Ins. Co.,* 969 So.2d 288, 291–93 (Fla.2007) (explaining that "arising out of" is broader than "liability because of acts or omissions of the named insured").

[Bolduc]" if ECI assumed liability for Bolduc's actions in a contract. ECI argues that even if wrongful action by Bolduc is required to trigger coverage under the additional insured provision, the wrongful act requirement is satisfied because Bolduc breached its contractual obligation under the subcontract to properly perform its work. ECI's argument hints at the more fundamental point that would need to be true in order for ECI to prevail: that because Bolduc breached the subcontract, ECI is now somehow contractually liable for Bolduc's breach under ECI's contract with Frontier.[10] We conclude that ECI's argument is without merit, and that even if ECI had assumed contractual liability in its contract with Frontier for Bolduc's acts and omissions, such liability is not within the scope of coverage provided by the additional insured endorsement in the Travelers policy.

The insurance policy contains a specific exclusion for contractual liability, stating that "[t]his insurance does not apply to ... '[b]odily injury' or 'property damage' for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement." The exclusion does not apply, however, to contractual agreements under which the insured "assume[s] the tort liability of another party." Tort liability is defined under the policy as "[a] liability that would be imposed by law in the absence of any contract or agreement." In other words, the policy only provides coverage for liabilities assumed in a contract to the extent that the contracting party has assumed liability for another's tortious conduct. Damages resulting from other contractual liabilities—including ECI's possible assumption of liability in its contract with Frontier for Bolduc's breach of the subcontract—are plainly excluded from coverage under the policy. Although Travelers did not argue the application of the contractual liability exclusion in the instant case, we conclude that ECI's interpretation of the additional insured endorsement would be inconsistent with the exclusion language in the policy.

▬▬▬ Additional insured clauses do not "enlarge the insurance coverage as defined in the policy[,]" but "merely cause[ ] the insurance to cover persons other than the named insured within the limits of the policy coverage." *Gudbrand-sen v. Pelto*, 205 Minn. 607, 610, 287 N.W. 116, 118 (1939). We have previously held that an endorsement "forms part of the insurance contract, and the policy and the endorsement must be construed together." *Wyatt*, 239 Minn. at 436–37, 58 N.W.2d at 875 (explaining that "[t]aken by itself, [an] indorsement means nothing. Of itself, it is not a contract in any sense of the word. By its terms it refers to the main policy" (citation omitted)). Therefore, if a policy excludes coverage for a particular type of liability, such an exclusion "cannot be ignored in construing the meaning of ... the endorsement." *Id.* at 438, 58 N.W.2d at 876. Consequently, it would be an unreasonable reading of the additional insured provision to allow ECI to become a named insured with respect to contractually-assumed liabilities that are excluded by other policy language and for which the policy would ultimately prevent ECI's recovery. In other words, it is unreasonable—and

10. ECI argues primarily that Bolduc is contractually liable to ECI, and never explains how Bolduc's contractual liability to ECI rendered ECI liable for the property damage. ECI's argument is not persuasive because *Bolduc's liability to ECI* is plainly not covered under the additional insured endorsement, which provides ECI with coverage only to the extent that ECI itself becomes liable. To establish coverage, therefore, ECI must show that it, not Bolduc, was liable for the property damage to the pipeline.

would not, in any case, allow ECI to recover the money it expended to repair the pipe—to conclude that ECI becomes an additional insured for liabilities that the policy plainly excludes. We therefore decline to interpret the additional insured endorsement in the manner urged by ECI, and instead conclude that the meaning of the additional insured endorsement is that it limits coverage to those instances in which the acts or omissions (i.e., negligence) of Bolduc leads to ECI's liability.[11] *See Consolidation Coal Co., Inc. v. Liberty Mut. Ins. Co.,* 406 F.Supp. 1292, 1300 (W.D.Pa.1976).

We therefore conclude that the additional insured endorsement is plainly a vicarious liability provision. Of the three ways in which ECI could become liable for property damage, only one is covered under the additional insured provision and the remainder of the policy. If ECI is directly liable for the property damage, the additional insured provision excludes coverage. If ECI is liable for damage through the assumption of contractual liability for Bolduc's acts or omissions, coverage is also excluded under other provisions of the policy. The additional insured endorsement, therefore, only provides coverage if ECI is vicariously liable for property damage "caused by acts or omissions of [Bolduc]." ECI can only be vicariously liable if Bolduc itself is liable. Because a jury found that Bolduc was not negligent, and that finding has not been appealed, ECI cannot

be vicariously liable for Bolduc's conduct in hitting the pipe, and ECI is not entitled to insurance coverage.[12]

## II.

Having concluded that Travelers is not obligated to reimburse ECI because ECI is not an additional insured under the policy, we next consider whether Bolduc has an obligation to reimburse ECI under the indemnification provision in the subcontract.

Determining whether Bolduc is required to indemnify ECI in this case is ultimately a question of statutory interpretation. The objective of statutory interpretation "is to ascertain and effectuate the intention of the legislature." Minn. Stat. § 645.16 (2012). In statutory interpretation "our first inquiry is whether the statute is ambiguous." *All Parks Alliance for Change v. Uniprop Manufactured Hous. Cmts. Income Fund,* 732 N.W.2d 189, 193 (Minn.2007). A statute is ambiguous "if it is reasonably susceptible to more than one interpretation." *Harris v. Cnty. of Hennepin,* 679 N.W.2d 728, 731 (Minn. 2004) (quoting *Current Tech. Concepts, Inc. v. Irie Enter., Inc.,* 530 N.W.2d 539, 543 (Minn.1995)). Where "a statute's words are clear and unambiguous as applied to an existing situation, we construe the words according to their common and approved usage." *S.M. Hentges & Sons, Inc. v. Mensing,* 777 N.W.2d 228, 231

---

**11.** Contrary to the assertion of the district court and ECI, determining that ECI cannot receive insurance coverage in this case is not predicated on an erroneous finding that ECI was negligent. ECI is correct that the jury never determined that ECI was negligent, and no amount of speculation regarding the events leading to the pipe's damage will change that fact. But a decision by this court that ECI cannot receive insurance coverage is based on the finding that Bolduc was not negligent, and ECI cannot trigger insurance

coverage based on anyone's fault other than Bolduc's.

**12.** Because we conclude that the additional insured endorsement does not provide coverage to ECI with respect to the pipe damage, we do not reach Travelers' alternative argument that ECI is not entitled to coverage because it voluntarily incurred the expenses necessary to repair the pipe without establishing a legal obligation to pay.

(Minn.2010). Additionally, "[w]e interpret a statute, whenever possible, to give effect to all of its provisions; we also read and construe a statute as a whole and 'interpret each section in light of the surrounding sections to avoid conflicting interpretations.' " *City of W. St. Paul v. Krengel,* 768 N.W.2d 352, 356 (Minn.2009) (quoting *Am. Family Ins. Grp. v. Schroedl,* 616 N.W.2d 273, 277 (Minn.2000)).

Minnesota Statutes § 337.02 provides, in relevant part, that:

> An indemnification agreement contained in, or executed in connection with, a building and construction contract is unenforceable except to the extent that: (1) the underlying injury or damage is attributable to the negligent or otherwise wrongful act or omission, including breach of a specific contractual duty, of the promisor or the promisor's independent contractors, agents, employees, or delegatees[.]

Section 337.02 therefore renders unenforceable indemnification agreements in which a party assumes responsibility to pay for damages that are not caused by the party's own wrongful conduct. *See Katzner v. Kelleher Constr.,* 545 N.W.2d 378, 381 (Minn.1996). But in Minn.Stat. § 337.05 (2012), "[t]he legislature has established a narrow exception to the general prohibition of indemnification from the indemnitee's own negligence." *Id.*[13] The exception in Minn.Stat. § 337.05,

subd. 1 provides that Section 337.02 "do[es] not affect the validity of agreements whereby a promisor agrees to provide specific insurance coverage for the benefits of others." Section 337.05 embodies the Legislature's approval of the construction industry's "practical response to [risk allocation] problems inherent in the performance of a subcontract" whereby "the parties are free to place the risk of loss upon an insurer by requiring one of the parties to insure against that risk." *Holmes v. Watson–Forsberg Co.,* 488 N.W.2d 473, 475 (Minn.1992). A third statutory provision protects a contracting party in the event that specific insurance is contracted for, but not procured by, the promisor. Under Minn.Stat. § 337.05, subd. 2 (2012), a contracting party can receive indemnification for breach of an agreement to insure if:

> (a) a promisor agrees to provide specific types and limits of insurance; and
>
> (b) a claim arises within the scope of the specified insurance; and
>
> (c) the promisor did not obtain and keep in force the specified insurance;
>
> then, as to that claim and regardless of section 337.02, the promise shall have indemnification from the promisor to the same extent as the specified insurance.

In a situation in which a promisor has failed to obtain the insurance required under a contract, section 337.05, subdivision

---

**13.** We find the opinion of the court of appeals in the present case particularly problematic with respect to enforcement of this statutory scheme, because of the court's assertion that "the 'narrow exception' [in Minn.Stat. § 337.05] appears to have swallowed the rule" prohibiting indemnification from the indemnitee's own negligence. 803 N.W.2d at 922 (quoting *Katzner v. Kelleher Constr.,* 545 N.W.2d 378, 381 (Minn.1996)). Additionally, the court of appeals concluded that Bolduc had an indemnification obligation to ECI regardless of Bolduc's fault, but did not tie the

indemnification to the court's conclusion that Travelers was required to provide insurance coverage to ECI. By interpreting the additional insured clause and the indemnification clause in the subcontract separately, and reversing summary judgment as to both Bolduc and Travelers, the court of appeals seemed to suggest that Bolduc's indemnification obligation was separately valid and enforceable under Minn.Stat. § 337.02, regardless of whether the insurance provided by Travelers insured that indemnification obligation.

2, allows the promisee to recover, even when the lack of insurance created an indemnification provision that section 337.02 would otherwise render unenforceable.

■■■ Therefore, when faced with questions about the enforceability of an indemnification provision in a construction contract, we must "consider[ ] the combined effect of sections 337.02 and 337.05," and "even though an indemnification provision may be unenforceable under section 337.02, a promise to purchase insurance to cover any negligent acts by the promisee is valid and enforceable." *Katzner*, 545 N.W.2d at 381. Under this statutory scheme, we have previously determined that an indemnity and insurance provision was valid under Minn.Stat. § 337.02 because "the clear and unambiguous language of the contractual provision . . . obligate[d] this subcontractor to obtain 'general liability insurance coverage and endorsements as will insure the provisions of this paragraph[.]'" *Holmes*, 488 N.W.2d at 475. We emphasized that our holding comported with the approval by the Legislature of "a long-standing practice in the construction industry by which the parties to a subcontract could agree that one party would purchase insurance that would protect 'others' involved in the performance of the construction project." *Id.*

To determine whether Bolduc can be required to indemnify ECI under the statutory scheme governing indemnification agreements in construction contracts, we first consider whether indemnification in this situation would violate Minn.Stat. § 337.02 and then whether any indemnification obligation ordinarily barred by section 337.02 is saved by Minn.Stat. § 337.05.

### A.

Bolduc argues that under the plain language of the statute, because it was not at fault for the damaged pipe, requiring Bolduc to indemnify ECI in this situation would run afoul of the prohibition in Minn. Stat. § 337.02. We agree.

Under the plain language of section 337.02, an agreement is unenforceable, unless "the underlying injury or damage is attributable to the negligent or otherwise wrongful act or omission, including breach of a specific contractual duty, of the *promisor*." Minn.Stat. § 337.02 (emphasis added). Here, the damage to the pipeline was not due to Bolduc's negligence, wrongful act, or breach of a specific contractual duty. A jury specifically determined that the damage was not attributable to the promisor's (Bolduc's) negligence. ECI has never challenged the jury's verdict. Instead, ECI argues that requiring Bolduc to indemnify ECI does not violate Minn.Stat. § 337.02 because, in hitting the pipeline, Bolduc breached a contractual duty. Specifically, ECI argues that Bolduc breached its obligation to perform its work "efficiently, properly and promptly," and by failing to pay for the repairs, breached its agreement to bear "complete responsibility" for its work. We conclude, however, that ECI has waived its argument regarding Bolduc's contractual liability. ECI moved for summary judgment on all of its breach of contract claims before the district court, and contrary to its assertion, did not preserve any contract claims for a second trial. Indeed, the stipulation of the parties specifies that after trying the negligence issue to the jury, all of the parties' other claims would be resolved by the district court on cross motions for summary judgment. The court of appeals did not address the district court's grant of summary judgment determining that Bolduc had not breached the subcontract by damaging the pipe. And ECI did not petition for review on this issue. *See State v.*

*Koppi,* 798 N.W.2d 358, 366 (Minn.2011) (stating that we do not ordinarily decide issues not preserved in a petition for review). The only breach of contract issue discussed in the petition to our court relates to Bolduc's obligation to indemnify ECI, not Bolduc's performance of its work.[14]

Even if the claim was not waived, however, ECI has presented no evidence that Bolduc breached the subcontract in performing its work. The district court properly granted summary judgment when it determined, based on the jury's verdict, that Bolduc had performed its work in accordance with the standard of care prescribed by the contract, and that there was no genuine issue of material fact with regard to the breach of contract claims. In this case, the negligence and breach of contract for performance of work claims both arose out of the same duty; therefore, the jury's determination on the negligence issue allowed the district court to properly determine that there was no evidence to find Bolduc in breach of its performance of work obligations. *See Lesmeister v. Dilly,* 330 N.W.2d 95, 102 (Minn.1983) (finding that "[t]he gravamen of this case in our view is contractual" because "[a]ny duties between the parties arose out of contracts, about which there was opportunity to bargain and allocate risks and duties. This was not a situation in which parties were fortuitously brought together, as in an automobile accident."); *cf. Moundsview Ind. Sch. Dist. No. 621 v. Buetow & Assoc., Inc.,* 253 N.W.2d 836, 839 (Minn.1977) (defining an architect's duty of care by reference to the terms of the architect's contract). Because we conclude that Bolduc was not negligent or in breach of contract with respect to the pipeline, any obligation to indemnify ECI, unaccompanied by a coextensive insurance agreement, would violate Minn.Stat. § 337.02. Therefore, under the statute, Bolduc cannot be required to indemnify ECI because the underlying damage is not attributable to Bolduc.[15]

### B.

Because Bolduc was not at fault for the pipeline damage, any obligation by Bolduc to indemnify ECI would violate Minn.Stat. § 337.02 unless that obligation was accompanied by a coextensive insurance agreement under Minn.Stat. § 337.05. Having already determined that no insurance coverage is available to ECI under the Travelers' policy with respect to the pipe damage, any indemnification obligation here is not saved by Minn.Stat. § 337.05, subd. 1, because any such obligation is not, based on our conclusion in the first section of this opinion, coextensive with an obligation to insure. Therefore, the only way in which Bolduc could indemnify ECI without violating the statutory scheme is if ECI complied with the requirements of Minn.Stat. § 337.05, subd. 2. Bolduc argues that ECI has waived its only claim that would allow it to recover from Bolduc. If ECI wanted to seek indemnification from Bolduc when Travelers denied its claim, it was required to comply with the statutory language in Minn.Stat. § 337.05, subd. 2. Under section

---

14. ECI admits that it is has not appealed to our court the district court's grant of summary judgment with respect to ECI's contractual claim that Bolduc failed to perform its work in a workmanlike manner. ECI notes in its brief that "the single issue to be addressed is the enforceability of the Indemnity and Insurance Agreement."

15. Under the plain language of the statute, it is irrelevant that the jury did not determine which party, if any, was at fault for the pipeline damage. Indemnification violates Minn. Stat. § 337.02 regardless of whether ECI, Frontier, or another party was at fault for the damage.

337.05, subdivision 2, a contracting party can receive indemnification for breach of an agreement to insure only if:

(a) a promisor agrees to provide specific types and limits of insurance; and

(b) a claim arises within the scope of the specified insurance; and

(c) the promisor did not obtain and keep in force the specified insurance.

Bolduc argues that because this statute clearly lays out the procedure for procuring indemnity when a contract contains an agreement for specific insurance, ECI cannot seek indemnity against Bolduc other than through an argument that Bolduc failed to procure the appropriate insurance. But ECI has waived this claim, and therefore Bolduc argues that it has waived its ability to seek indemnification from Bolduc.

We agree with Bolduc that ECI has waived its claim that Bolduc breached the contract by failing to provide the type of insurance mandated by the contract. This breach of contract claim did not appear in ECI's original complaint, did not appear in ECI's motion for summary judgment, and did not appear in its responses to the other parties' motions for summary judgment. At the hearing before the district court on the summary judgment motions, counsel for Bolduc stated that:

> One of the claims that ECI submitted against Bolduc was that Bolduc breached its contract by failing to get additional insured coverage for ECI. . . . I think ECI concedes at this point in time that the coverage, the additional insured coverage that Bolduc obtained through Travelers satisfies the terms of that contract."

ECI did not respond. Because ECI waived this claim, we conclude that ECI cannot now reassert this claim on appeal and receive indemnification from Bolduc. Therefore, we conclude that regardless of the scope of the indemnification provision in the contract, any requirement that Bolduc indemnify ECI is unenforceable because any such requirement would violate Minn.Stat. § 337.02.

Reversed.

PAGE, J., took no part in the consideration or decision of this case.

WRIGHT, J., not having been a member of this court at the time of submission, took no part in the consideration or decision of this case.