*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-1703**

Cheryl A. Hansen,
Appellant,

vs.

The Northwestern Mutual Life Insurance Company,
Respondent.

**Filed August 3, 2015
Affirmed
Bjorkman, Judge**

Hennepin County District Court
File No. 27-CV-13-16815

Scott M. Flaherty, Elise L. Larson, Robert J. King, Jr., Briggs and Morgan, P.A., Minneapolis, Minnesota (for appellant)

Erik T. Salveson, Benjamin C. Johnson, Nilan Johnson Lewis, P.A., Minneapolis, Minnesota (for respondent)

Considered and decided by Bjorkman, Presiding Judge; Schellhas, Judge; and Stauber, Judge.

## U N P U B L I S H E D   O P I N I O N

**BJORKMAN**, Judge

Appellant-insured challenges summary judgment dismissing her claim for total-disability benefits. We affirm.

**FACTS**

Appellant Cheryl A. Hansen, M.D., is a board-certified obstetrician/gynecologist. In 2001, Dr. Hansen joined Western OB/GYN in Waconia. Her practice included the full range of OB/GYN services, including deliveries, surgeries, routine examinations, counseling, and cancer screenings.

Dr. Hansen has epilepsy. On May 16, 2012, she experienced a syncope episode while performing surgery, which caused her to lose consciousness. She eventually returned to work with restrictions, including having another surgeon present during all surgical procedures. On September 14, the restrictions were lifted. In early November, Dr. Hansen experienced a second syncope episode, after which her physician advised her that she could no longer safely perform deliveries or surgical procedures. Dr. Hansen did not return to work at Western OB/GYN.

At all relevant times, Dr. Hansen had disability insurance with respondent Northwestern Mutual Life Insurance Company. The insurance policy covers both partial and total long-term disability, defined as follows:

> **Total Disability**. . . . After the Initial Period, the Insured is totally disabled when he is unable to perform the principal duties of his occupation and is not gainfully employed in any occupation.
>
> **Partial Disability**. The Insured is partially disabled when:
> - he is unable to perform one or more principal duties which accounted for at least 20% of the time he spent at his occupation before the disability started; or
> - he has at least a 20% loss of time spent at his occupation.

On November 29, Dr. Hansen notified Northwestern Mutual of her intention to seek long-term disability benefits. Northwestern Mutual determined that she became partially disabled on May 16, the date of her first syncope episode, and began making payments. Northwestern Mutual requested Dr. Hansen's billing records for the year preceding and seven-and-one-half months after the first episode in order to evaluate the extent of her disability. After reviewing the CPT codes[1] associated with the billing records, Northwestern Mutual determined that Dr. Hansen's non-surgical gynecologic duties accounted for 63% of her pre-disability duties (and 33% of the related charges), and that Dr. Hansen is still able to perform those duties. Accordingly, Northwestern Mutual denied Dr. Hansen's claim for total-disability benefits. Dr. Hansen continues to receive partial-disability benefits.

Dr. Hansen commenced this action, seeking a declaration that she is entitled to total-disability benefits. She asserts that her inability to perform surgeries, deliver babies, cover call, and perform obstetrics-related work renders her totally disabled as defined by the policy. Northwestern Mutual moved for summary judgment. In opposing the motion, Dr. Hansen submitted affidavits from two experts, Nancy Cooley, M.D., and Edward Beadle, M.D., opining that Dr. Hansen is unable to perform any of her principal duties. Dr. Hansen also moved for summary judgment.

The district court granted Northwestern Mutual's motion, concluding that "[u]nder no reasonable interpretation of the policy and this record, can the broad constellation of

---

[1] CPT codes are "numbers assigned to every task and service a medical practitioner may provide to a patient including medical, surgical and diagnostic services."

duties that [Dr. Hansen] continues to be able to perform be considered non-principal duties of an OB/GYN." Dr. Hansen appeals.

## D E C I S I O N

On appeal from summary judgment, we review de novo whether there are any genuine issues of material fact and whether the district court erred in applying the law. *Ruiz v. 1st Fid. Loan Servicing, LLC*, 829 N.W.2d 53, 56 (Minn. 2013). We view the evidence in "the light most favorable to the party against whom summary judgment was granted." *STAR Centers, Inc. v. Faegre & Benson, L.L.P.*, 644 N.W.2d 72, 76-77 (Minn. 2002). A genuine issue of material fact exists when there is sufficient evidence that could lead a rational trier of fact to find for the nonmoving party. *DLH, Inc. v. Russ*, 566 N.W.2d 60, 69 (Minn. 1997).

## I.     The policy language is unambiguous.

"Interpretation of an insurance policy, and whether a policy provides coverage in a particular situation, are questions of law that we review de novo." *Eng'g & Constr. Innovations, Inc. v. L.H. Bolduc Co.*, 825 N.W.2d 695, 704 (Minn. 2013). An insurance policy, like other contracts, is governed by its terms. *Bobich v. Oja*, 258 Minn. 287, 294, 104 N.W.2d 19, 24 (1960). Accordingly, we interpret policy terms in their plain and ordinary sense to effectuate the intent of the parties. *Jenoff, Inc. v. N.H. Ins. Co.*, 558 N.W.2d 260, 262 (Minn. 1997). And we read particular terms in the context of the entire policy, seeking to give effect to all of the policy provisions. *Eng'g & Constr. Innovations, Inc.*, 825 N.W.2d at 705. A policy provision is ambiguous if it is susceptible to more than one reasonable interpretation. *Medica, Inc. v. Atl. Mut. Ins. Co.*, 566

N.W.2d 74, 77 (Minn. 1997). When construction of an ambiguous provision depends on extrinsic evidence, it is a question of fact for the jury. *Turner v. Alpha Phi Sorority House*, 276 N.W.2d 63, 66 (Minn. 1979).

In her principal brief, Dr. Hansen asserted that the insurance policy is ambiguous because the district court rejected her argument that the term "principal duties" should be interpreted in accordance with the Merriam-Webster Dictionary to mean "most important, consequential, or influential." But Northwestern Mutual does not challenge this definition, and we agree that "principal duties" is synonymous with "most important, consequential, or influential duties." And close examination of the district court's order reveals that the court only rejected Dr. Hansen's suggestion that an insured can have only one principal duty. We agree with the district court. The policy clearly provides that an insured "is totally disabled when he is unable to perform the principal duties of his occupation." And an insured is partially disabled when he is not able "to perform one or more principal duties which accounted for at least 20% of the time he spent at his occupation before the disability started." Read together, these provisions clearly state that an insured may have more than one principal duty, and that an insured is not totally disabled when he may still perform at least one of his principal duties. Because we discern no ambiguity in the policy language, we turn to whether there is a factual dispute concerning Dr. Hansen's ability to perform her principal duties.

## II.     Dr. Hansen is not entitled to total-disability benefits as a matter of law.

Dr. Hansen argues that there are genuine fact issues as to whether she is totally disabled. She points to her deposition testimony—including the substantive changes she

5

made when reviewing the transcript pursuant to Minn. R. Civ. P. 30.05—and the affidavits of her experts to support her contention that a jury trial is required. We are not persuaded.

It is undisputed that Dr. Hansen is still able to perform non-surgical gynecologic services. Her own expert, Dr. Carrie Terrell, analyzed the CPT codes and determined that such services accounted for approximately 42% of Dr. Hansen's pre-disability production units and 23% of her charges. Indeed, non-surgical gynecologic services accounted for more of her production units than any other category of services.[2] Dr. Hansen's testimony is consistent with the CPT code analysis. She stated that prior to the onset of her disability, she devoted more than three days a week to office visits. Some of that time involved in-office surgical procedures that she can no longer perform, but a large percentage was spent providing non-surgical gynecologic services.

Dr. Hansen's amended deposition testimony does not create a genuine issue of material fact as to whether she can still perform at least some of her principal duties. Contrary to Northwestern Mutual's assertion, a deponent may use an errata sheet to make "changes in form or substance" to deposition testimony. Minn. R. Civ. P. 30.05. Following her deposition, Dr. Hansen made several substantive changes, including that she had misspoken when she stated she can still treat urinary incontinence because some treatment requires surgery. But she did not change her testimony that she can still perform general counseling services, annual checkups, cancer screenings, osteoporosis

---

[2] The CPT codes are organized into the following categories: gynecologic office visits, deliveries, obstetrics office visits and follow-ups, obstetrics surgeries, gynecologic surgeries (in operating room), and gynecologic surgeries (office-based).

6

diagnosis and treatment, premenstrual syndrome treatment, infertility treatment, contraceptive treatment, and menopause management.

Dr. Hansen next asserts that summary denial of her claim for total disability benefits impermissibly ignores the affidavit testimony of her medical experts. We disagree. The experts do not opine that Dr. Hansen is unable to provide non-surgical gynecologic services. Rather, they state that such services are secondary to the principal duties of delivering babies and performing surgical procedures. Dr. Beadle opined that "[t]he specialty of obstetrics and gynecology involves the delivery of babies and the performance of all variety of surgeries and procedures" and that it is "a fundamentally surgical practice." Dr. Cooley stated that office work is secondary to the principal duties of an OB/GYN, which she identified as "obstetrical deliveries, both vaginally and surgically as well as gynecological surgeries and procedures." Dr. Cooley explained that she does not consider non-surgical gynecologic work a principal duty because a physician cannot maintain a viable practice providing only such services. But the insurance policy does not condition entitlement to total-disability benefits on an insured's employability. In other words, the relevant inquiry is not whether Dr. Hansen is unable to maintain a practice, but rather whether she is unable to perform any of the principal duties of an OB/GYN. While delivering babies and performing surgery are unquestionably principal duties of an OB/GYN, they are not the only principal duties. The undisputed fact that Dr. Hansen can still provide services that comprised 42% of her production before the onset of her disability establishes that she is not totally disabled.

Our conclusion finds support in cases from other jurisdictions that have addressed similar circumstances. *See Socas v. Nw. Mut. Life. Ins. Co.*, 829 F. Supp. 2d 1262, 1272 (S.D. Fla. 2011) (concluding that a dentist who could no longer perform oral surgery or advanced dental procedures but was still able to provide general dentistry services was able to perform some principal duties of a dentist); *Hershman v. UNUMProvident Corp.*, 660 F. Supp. 2d 527, 532, 533-34 (determining that a cardiologist who could no longer perform invasive procedures but could still perform consultative duties was not totally disabled when a substantial portion of the doctor's pre-disability practice was devoted to consultative duties); *Provident Life & Acc. Ins. Co. v. Knott*, 128 S.W.3d 211, 219-20 (Tex. 2003) (concluding that an OB/GYN who could no longer perform deliveries or many surgeries but could still provide general services was not totally disabled).

In sum, the policy clearly provides total-disability benefits when the insured is unable to perform any of her principal, most important duties. Because the undisputed evidence shows that Dr. Hansen is still able to perform some of her most important duties, she is not entitled to receive total-disability benefits.

**Affirmed.**